[Central of Georgia Railway Co. v. Champion.]

# Central of Georgia Railway Co
# *v.* Champion.

*Bill to Abate Continuing Nuisance.*

(Decided April 15, 1909.　Rehearing denied May 11, 1909.
49 South. 415.)

1. *Water and Water Courses; Natural Flow of Stream.*—A landowner has a right to have the waters of a stream flowing through his land to flow from it by its natural channels. ·

2. *Same; Obstruction by Railroad.*—While railroad companies may build their roads across streams, they must exercise due care not to obstruct the natural flow by embankments to the detriment of landowners in penning up waters and causing them to overflow lands.

. 3. *Same; Abatement.*—If an embankment erected across a water course obstructs the natural flow of the water and causes it to flood and back up and accumulate on the lands of another proprietor causing a continuous and constantly recurring injury, it presents a case authorizing the abatement of it, as a nuisance.

4. *Same; Incidental Relief; Actual Damages.*—Actual damages which the complainant may have sustained are incidental to relief by injunction against obstruction of natural flow of water causing injury to the land.

5. *Same; Inequitable Defenses.*—Where the action is for injunction to abate a nuisance caused by an obstruction to the natural flow of water and it is conceded that the lands are injured by the waters backing and flooding them, a defense setting up that the injury was caused by the insufficiency of a ditch cut by respondent in order to carry off the water, and that the complainant's remedy was not to have the waterway reopened under the embankment but was to have this ditch cut deeper, is inequitable as placing the respondent in the attitude of having wrongfully diverted the water from its natural course, thus causing it to pen back and flood complainant's land, and at the same time claiming immunity from the wrong, and asserting it as a reason why complainant should not have its undoubted relief from having the water restored to its natural course, and hence, should not be allowed.

APPEAL from Shelby Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by S. Z. T. Champion to abate a continuing nuisance and to recover actual damages for the overflow of his lands on account of an embankment maintained by the Central of Georgia Railway Company. From a decree for complainant respondent appeals. Affirmed.

LONDON & FITTS, for appellant.—Counsel discuss the assignments of error, and insist that the chancery court erred in granting the relief sought, but without citation of authority.

SAM WILL JOHN, for appellee.—The law governing this case is accurately and fully stated in the case of *A. G. S. R. R. Co. v. Crowder,* 149 Ala. 72.

DENSON, J.—The bill in this cause is filed by the complainant, Champion, against the Central of Georgia Railway Company, and seeks to abate a continuing nuisance alleged to have been created by the respondent, intentionally, in the filling up of an open waterway that bisected an embankment of the respondent's road.

The bill shows that complainant is the owner in fee of the northwest quarter of the northwest quarter of section 2, township 18, range 1 east, in Shelby county, Ala., subject to an easement in favor of the respondent to maintain and operate a railroad over or across the northeast corner of the tract. The respondent acquired its right of easement in succession to the Columbus & Western Railway Company, and that company acquired the right from S. S. and R. E. Elliott. The latter company constructed the railroad across the lands named. The complainant deduces his title by mense conveyances from the Elliotts. In constructing the road, a high embankment of earth was thrown up, across the land in question; but an open waterway, by means of trestling, was left through the embankment, through which ran a stream, "sometimes called 'Elliott's branch,'" which had its course across the land described. It is alleged that the waterway left by the company was about 20 feet wide at the "natural surface of the earth, and about 50 feet wide at the top, which was about 10 feet above

the bed of Elliott's branch." It is then shown by the bill that this open way was of sufficient size or capacity to admit all the water which flowed down Elliott's branch, which, it is alleged, collected the water from an area of about 2,000 acres, and carried same, through the embankment and under the trestle and by way of a bed or channel of its own, for a distance of 2 miles, to and into Bear creek, a much larger stream. It is shown that the foregoing was the condition of the land and the railroad at the time complainant became the owner of the land in February, 1902, and that this status remained unchanged until about the month of August, 1903, when it is alleged, the waterway under the trestle was filled up by the agents or servants of the respondent. It is shown by the bill that, shortly after the filling up of the waterway through the railroad embankment under the trestle and the closing of such outlet for the waters of Elliott's branch, said branch or stream, being dammed up, was forced back upon the land of complainant covering several acres with water and rendering it unfit for use. It is further shown that shortly after the waterway was filled up, the respondent's agents or servants cut a narrow ditch along the southwestern side of the railroad embankment, from Elliott's branch, into Bear creek. It is averred that, instead of giving the ditch a fall toward Bear creek it is made to fall in the opposite direction and toward Elliott's branch, so that, in times of high water in Bear creek, it is diverted therefrom and flows through the ditch back upon complainant's land and is added to the water that comes down Elliott's branch, effectually overflowing and submerging several acres of plaintiff's land, filling up his ditches, destroying his crops and causing a rank growth of trees, etc., on the land, thus not only rendering the land unfit for cultivation, but causing, and will continue to cause,

sickness in complainant's family. The bill alleges that complainant has already been damaged by the nuisance in the sum of $1,000. It is then averred that the injury to complainant's land is continuing in its nature, ever recurring, and, if not abated, will very soon destroy the value of complainant's farm and homestead. The prayer of the bill is for a mandatory injunction, commanding respondent to open the waterway through the embankment under the trestle to its original dimensions in width and depth, and that respondent be perpetually enjoined from closing the waterway under the trestle. It is also prayed that respondent be required to account to complainant touching the amount of damages suffered by complainant from the filling up of said waterway, and there is a general prayer for relief. The respondent answered, admitting the state of the title to the property as averred, the construction of the railroad by the Columbus & Western Railroad Company in the manner averred, the leaving of the waterway open by it, and the closing of the waterway by the respondent, and that the ditch was cut by the respondent from Elliott's branch to Bear creek. It denies all the other material allegations of the bill, and avers that the ditch cut by it was amply sufficient to carry to Bear creek the water that had formerly flowed under the trestle. On final hearing on the pleadings and proof, the chancellor granted the relief prayed. It is from that decree that respondent has appealed, here assigning the decree as error.

The law is well settled in this state, as well as elsewhere, that a landowner through whose lands a stream of water flows has a right to have the water course or flow from his land according to nature; and while railroad companies, in constructing and maintaining their roads, may build them across streams, they must exercise due care not to obstruct streams to the detriment of land-

owners, by the penning back of the water and overflowing their lands.—30 Am. & Eng. Ency. Law, 354, 374, 375; *Southern Railway Co. v. Plott*, 131 Ala. 312, 31 South. 33; *Shahan v. A. G. S. R. R. Co.*, 115 Ala. 181, 22 South. 449, 67 Am. St. Rep. 20; *S. A. & M. Ry. Co. v. Buford*, 106 Ala. 303, 312, 17 South. 395; *Ulbricht v. Eufaula Water Co.*, 86 Ala. 587, 6 South. 78, 4 L. R. A. 572, 11 Am. St. Rep. 72.

It is also true that, if an embankment is erected across a water course, thus obstructing the natural flow of the water and causing it to flood or flow back and accumulate on the lands of an upper proprietor, causing injury to them, and the injury is, in its very nature and character, continuous or constantly recurring, not temporary and fugitive, a case for the interference of a court of chancery is presented, to abate a nuisance by its injunctive power. The jurisdiction of the court in such cases rests upon the theory of irreparable injury, for which legal remedies do not afford adequate redress, and against which a court of equity only can afford relief and protection.—*Nininger v. Norwood*, 72 Ala. 277, 47 Am. Rep. 412; *A. G. S. R. R. Co. v. Prouty*, 149 Ala. 71, 43 South. 352.

But it is really needless to discuss the law of the case: All the principles applicable to the instant case are outside of the pale of controversy. The solution of such cases most usually rests upon the facts, and the case at bar is no exception, because appellant concedes that the case turns upon, and must be decided by, the facts disclosed in the record. According to the principles of law to which we have already adverted, the bill on its face presents a cause for a mandatory injunction requiring the respondent to open the waterway through its embankment of sufficient dimensions to permit the water of Elliott's branch to pass through, and, incidental to

that relief it also presents a case for actual damages which the complainant may have sustained.

As to the proof, it is voluminous; but it has been read with painstaking care, and all the legal testimony has been thoroughly considered. We do not deem it necessary nor subservient of any good purpose to enter upon a discussion of it. The chancellor's opinion appears in the record and we think that his deductions and holdings, upon the merits of the case, are sustained by the proof, and that the decree is in harmony with the proof. Indeed, it is tacitly conceded by appellant that the lands of the complainant have been injured by the water's backing upon and flooding them; but it contends that the injury was caused by the insufficiency of the depth of the ditch near Bear creek, and not by the closing of the waterway, and that complainant's remedy is not to have the waterway reopened under the embankment, but to have the ditch cut deeper—that this should have been the prayer of the bill. There is no testimony to the effect that the ditch is not of sufficient depth to carry the water, and that the water from Bear creek "shoots back" upon the lands of complainant through the ditch, nor to the effect that if the ditch was deepened it might prevent the flooding. On the other hand, the testimony tends to show that the embankment causes the flooding, and it is unnquestionably true that, if the waterway was open, and the water allowed to flow in its natural course, the flooding and injury would be diminished, or, as the proof tends to show, would be prevented. This contention places the respondent in the attitude of having wrongfully diverted the water from its natural course by an imperfect channel, thus causing the water to pen back and flood complainant's land; and, at the same time, of claiming immunity from such wrong—yea, more, of asserting it as an obstacle to complainant's

[Francis, et al. v. White.]

undoubted relief through having the water restored to its natural course. A court of conscience cannot lend ear to this inequitable contention.

The decree of the chancellor will be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.