141 So. 641

### GULF STATES STEEL CO. v. LAW et al.
### 7 Div. 116.

Supreme Court of Alabama.

April 14, 1932.

Rehearing Denied May 26, 1932.

668

Hood & Murphree, of Gadsden, for appellant.

McCord & McCord, of Gadsden, for appellees.

KNIGHT, J.

The plaintiffs brought this suit against the defendant, Gulf States Steel Company, a manufacturing corporation, to recover damages for causing the destruction, by water, of an outstanding crop of corn, in which plaintiffs, as landlord, had an interest. It appears from the complaint, which consists of a single count, that the plaintiffs owned a certain tract of land in Etowah county during the year 1929, and for some years prior thereto; this land was located along the west side of a natural stream, locally known as Big Wills creek; that during the said year a portion of this land was planted to corn, and, before this crop was gathered and housed, it was destroyed by water. With reference to its destruction, and the cause thereof, the complaint avers: "That on the 15th day of May, 1929, and until the time of the filing of this suit the defendant corporation has maintained a dam, wall, or other obstruction across said Big Wills Creek and adjacent thereto below the lands aforesaid belonging to plaintiffs, which dam, wall and other obstruction in time of heavy rain fall obstruct, choke, and hinder the flow of the water in said stream and throw the same back upon plaintiffs' said bottom lands, and plaintiffs aver that from said May 15, 1929, to the date of the filing of this complaint defendant negligently and wrongfully caused the waters of Big Wills Creek in times of heavy rain fall many times to be thus thrown back upon plaintiffs' said valuable bottom land and to spread out over large areas thereof to a depth of several feet, and as a proximate consequence the crops of corn, hay, and other farm produce on said land were damaged, destroyed or rendered of greatly less value so that plaintiffs lost a large amount of rents, incomes and profits from said lands."

Prior to the amendment of the complaint, plaintiffs also charged injury to the land, but this was stricken after demurrer was overruled.

■ If the averments of the complaint are true, and we must so consider them on demurrer, the maintenance by the defendant of the dam, wall, or other obstruction across Big Wills creek, as averred in the complaint, was a tort in the nature of a private nuisance, and for all damages proximately occasioned thereby to the plaintiffs the defendant would be answerable; and no averment of negligence is necessary in such a complaint. Mobile & Ohio R. Co. v. Red Feather Coal Co., 218 Ala. 582, 119 So. 606; Savannah, A. & M. Ry. v. Buford, 106 Ala. 303, 17 So. 395; Cent. of Ga. v. Windham, 126 Ala. 552, 28 So. 392; Lindsey v. Southern R. Co., 149 Ala. 349, 43 So. 139; Southern R. Co. v. Lewis, 165 Ala. 555, 51 So. 746, 138 Am. St. Rep. 77; Nashville, C. & St. L. Ry. v. Yarbrough, 194 Ala. 162, 69 So. 582; Nininger v. Norwood, 72 Ala. 277, 47 Am. Rep. 412; Richards v. Wash. Terminal Co., 233 U. S. 546, 34 S. Ct. 654, 58 L. Ed. 1088, L. R. A. 1915A, 887; Southern R. Co. v. Fisher, 140 Tenn. 428, 205 S. W. 126, 6 A. L. R. 717.

In the case of Savannah, A. & M. Ry. v. Buford, 106 Ala. 312, 17 So. 395, 398, it held: "The wrong intended to be guarded against is the diversion of water, causing it to flow upon the lands of another, without his will, which did not naturally flow there; and it is not deemed material, whether the water is diverted from a running stream or is surface water caused to flow where it did not flow before."

In the case of McCary v. McLendon et al., 195 Ala. 497, 70 So. 715, it is said: "The owner of the dominant estate has a natural easement in the servient estate; this carries the right to discharge waters, naturally falling upon or flowing through his land, upon or over the servient estate, and denies to the servient owner the right of interrupting or obstructing such natural flow or passage of the waters, to the detriment of the land of the dominant proprietor. This theory has found expression in the maxim, 'Aqua currit et debet currere, ut currere solebat.' This rule provides for the natural flow of water from the upper, over the lower lands, where the industry of man has not intervened to create the servitude. The proprietor of the higher or dominant estate can be deprived of this right only by his own grant or license, actual or implied, or by condemnation for public use. Any obstruction resulting in the unnatural enlargement of the stream, to the injury of the upper proprietor, gives a right of action." See, also. Sloss-Sheffield S. & I. Co. v. Mitchell, 167 Ala. 226, 52 So. 69; Central of Ga. R. Co. v. Champion, 160 Ala. 517, 49 So. 415; So. Ry. Co. v. Plott, 131 Ala. 312, 31 So. 33; Shahan v. Ala. G. So. R. R. Co., 115 Ala. 181, 22 So. 449, 67 Am. St. Rep. 20; Ulbricht v. Eufaula Water Co., 86 Ala. 587, 6 So. 78, 4 L. R. A. 572, 11 Am. St. Rep. 72; 40 Cyc. 569.

■ Of course this does not mean that the owner of land may not erect or maintain a dam across a natural stream, flowing through his lands, for reasonable purposes and uses, but he cannot detain the water in such quantities as to make it overflow and flood the lands of others. While putting his own to use, he must not be either forgetful or unmindful of the right of his neighbor to also use his land and to enjoy the profits therefrom. The maxim "Sic utere tuo ut alienum non laedas" applies. Sloss-Sheffield S. & I. Co. v. Mitchell, supra; 40 Cyc. 570–572.

The application of these principles of law, in considering the sufficiency of the complaint, as against the demurrer, demonstrates that the complaint states a cause of action, in tort, in the nature of a private nuisance, and is not subject to the demurrer. The action of the court in overruling the demurrer therefore was free from error.

■ It is also urged, for error, that the court improperly allowed the plaintiffs to introduce in evidence the instrument executed by Chadwick and wife to appellant in January, 1928, wherein Chadwick, for the consideration of $750 conveyed to appellant the right and privilege to construct and maintain a dam and works appurtenant thereto at the site or location of the existing dam "to the height of six feet above the existing dam across Big Wills creek," which said existing dam is at the point where the pumping station of the appellant is located. This is the dam over which the present suit arose.

In this instrument, a part of the consideration moving from appellant to Chadwick is recited to be "in addition to the consideration hereinbefore named, passing from the party of the second part to the said J. M. Chadwick, the said party of the second part is to raise and fill in, or cause to be raised or filled in, with slag, the public road along the stretch thereof that crosses the slough and west of the said McCartney Bridge, said stretch of road to be raised and filled substantially to the height of the stakes established along said stretch by the county engineer, Fitzhugh Lee; and west of said slough and to the width of fourteen (14) feet is to construct an approach to said public road from a private road of the said Chadwick * * * and to construct a levy consisting of a concrete wall and slag or other similar material along the south and west bank of said creek from McCartney bridge down to the west end of the proposed dam, said levy and wall to be of the height of floor of said bridge at the end of it and to the width of at least six inches above the top of said dam at the other end, and which is to be tied on to said dam."

It is most strenuously urged that the admission of this instrument in evidence was error, which should work a reversal of the case. The appellant insists that appellees "had no connection whatever with the agreement, hence as to them and the instant case, its contents were purely ex parte." We do not agree with appellant in this contention. The appellees, though not parties to the agreement, or contract, were directly interested therein by reason of the fact that the execution of the agreement by appellants might, under some circumstances, involve an invasion of their rights. It (the agreement) called for the doing by appellant of one of the things, if appellees' evidence is to be believed, which resulted in the inundation of appellees' land, during heavy rainfalls, resulting in the destruction of the crops on their land. That this agreement, considered in connection with the evidence in the case, tending to show that appellant not only furnished the slag for the raising of the road, but also loaded the county's truck with the slag used in "raising" the road, has some probative force, material and relevant, we cannot doubt.

The authorities cited by appellant are not in point. These cases simply hold that, while recitals in deeds and mortgages are prima facie binding upon the parties thereto, they are not binding upon strangers. No such question is here presented.

The instrument under consideration carries with it the declared intention and purpose of the defendant to do the very thing which is

complained of in this suit. In effect, the plaintiffs say that the defendant, in concert with the county, raised that road, thus in part closing an outlet for the water on the occasion of heavy rainfall. Just why the plaintiffs should not be allowed to make this proof, we fail to see. We hold the court properly allowed the plaintiffs, as for any grounds of objection assigned thereto, to read the contract in evidence. Somewhat in point is the case of Morgan Hill Paving Co. v. Fonville, 222 Ala. 120, 130 So. 807.

■ We do not think there was any error in permitting plaintiffs to offer in evidence the photographs taken in 1930 showing flood conditions during the month of November, 1930. These photographs were taken by Law, one of appellees, about November 15, 1930, when the bottom lands of plaintiffs were overflowed, and the testimony in the case showed, or tended to show, that the dam, wall, and road were in the same condition as in the year 1929, and, while there was evidence subsequently admitted showing that the water in the 1930 flood was not quite as high as in the 1929 flood, it also showed the difference was slight.

We have carefully read and considered the court's oral charge. The defendant reserved exceptions to practically all of the charge, paragraph by paragraph. Reading and construing the several portions of this charge in connection with the entire charge, we are at the conclusion that it correctly stated the law of the case, as heretofore pronounced by this court. Nor do we find that the court unduly emphasized any parts of the charge, or invaded the province of the jury.

■ The defendant had the benefit of many charges, given at its request, some of which were possibly more favorable to defendant than the law applicable to this case entitled it. Twenty-six charges, duly requested in writing, were refused to defendant.

Charge 3 is as follows: "I charge you, gentlemen of the jury, that plaintiff's right to have the water of Wills Creek flow naturally and in the natural channels of that creek are subject to the right of the defendant, a manufacturing corporation and an owner of lands abutting on that creek, to place a dam across the creek and to reasonably back the waters thereof for use by it for manufacturing purposes to the extent that plaintiffs will not be unreasonably damaged thereby."

It should suffice to say that there is no law, to which our attention has been called, that gives to a manufacturing corporation, which owns land abutting on a creek, the right "to place a dam across the creek and to reasonably back the waters thereof for use by it for manufacturing purposes to the extent that plaintiffs will not be unreasonably

damaged thereby." If by building a dam across the creek the waters therefrom are caused to back upon lands of another, thereby substantially injuring such lands, such owner will have a cause of action therefor against the one who constructed the dam. McCary v. McLendon et al., 195 Ala. 497, 70 So. 715; Sloss-Sheffield S. & I. Co. v. Mitchell, supra. The same criticism applies to requested charge 4.

■ Charges 5 and 6, refused to defendant, were fully covered by defendant's given charge 15. Hence their refusal involved no injury to defendant.

Charge 7, refused to defendant, was fully covered by the court's oral charge and by defendant's given instructions 17 and 18.

Charge 13 is not only abstract, but bad, in that it assumed it to be a fact that the wall confined the waters of the creek to the natural channels thereof, and did not cause plaintiffs' lands to be overflowed.

Charges 20, 23, and 24, refused to defendant, were fully covered by the court's oral charge.

Charge 26 was abstract.

If it be conceded that charge 21 asserts a correct proposition of law, its refusal was justified because covered by the court's oral charge.

The other charges refused to the defendant were refused without error.

■■ On cross-examination of the witness C. H. Dobbs, the defendant offered to show by the witness the following facts: "Defendant proposed to show by this witness that on Canoe Creek, Big Wills Creek, and all that territory down for ten miles further on where it empties into the Coosa River, and in the the same general section as Wills Creek on down to Coosa River, and the Coosa River itself with all of its tributaries in the general neighborhood and section of the Big Wills Creek, on those streams the bottom lands got under water in the fall of 1929 and destroyed the corn on those streams that year, the same as the crops on the Law lands were destroyed. He proposed to show the conditions on these streams were in the same general neighborhood and section as Big Wills Creek, and that substantially the same conditions resulted with reference to floods in the year 1929, thereby destroying practically all the corn on bottom lands adjoining these creeks at the same time that the crops were destroyed on Big Wills Creek."

The plaintiffs objected to "the introduction of such evidence." The court sustained the plaintiffs' objection. The appellant's contention in the case was that the plaintiffs' injury and damage were brought about by, and

were the proximate result of, an unprecedented rainfall, beyond human foresight, and not the result of the construction of the dam, or the elevation of the roadbed, as charged in the complaint. Of course, if this were true, such rainfall would be held to be the vis major, and defendant would not be answerable in damages for the destruction of plaintiffs' crops under such circumstances.

Appellant, in brief, submits a short argument in support of the admissibility of the proposed evidence, but cites no authority, dismissing the subject with the statement "that the evidence was so manifestly relevant and material that it requires the citation of no authority, it being so simple and elementary." The appellees offer neither argument, nor citation of authority to support their objection, or the ruling of the court superinduced thereby. We have given the question careful consideration, examining such authorities as a diligent search and a thorough investigation have brought under our notice. The question of the volume and excessiveness of the rainfall in November, 1929, was a vital one in the case, and this fact was not overlooked in the court's charge to the jury. The writer was at first impressed with the idea that the evidence offered had a direct bearing upon the issues in the case, and that this was one of the modes open to defendant to show that the injury complained of was not the result of defendant's interference with the stream, but was the direct and immediate result of the unprecedented rainfall—the vis major. The real question in the case, so far as presented by the pleadings, is, Was the effect of the water on plaintiffs' land different from what it would have been without the dam? Would the November rains have covered the plaintiffs' land, if there had been no dam? In the case of Riverside & Dan River Cotton Mills, Inc. v. Waugh, 117 Va. 386, 84 S. E. 658, it was held that, in an action to recover damages for flooding lands by a dam, it is competent for the defendant to show that the damages were inflicted by a sudden and unusual freshet in the stream, and not by the dam; and, as tending to prove that fact, the defendant may show that other lands on the same stream and similarly situated, but unaffected by the dam, were similarly damaged on the same day by the same freshet, and that, for the evidence to be admissible, the similarity need not be precise in every detail. Substantial similarity, or a similarity in such circumstances or conditions as might supposedly affect the results in question, is all that is necessary. 1 Wigmore on Evidence, § 442, page 522.

However, this court in the case of Southern Ry. Co. v. Plott, 131 Ala. 312, 31 So. 33, has reached a different conclusion from that reached in the Waugh Case, supra, and we feel constrained to follow the pronouncement of our own court on the point under consideration. To have allowed the defendant to pursue the investigation proposed by the question, broad as it was in scope, would have "engendered an unprofitable multiplication of issues." This should be avoided as far as possible in jury trials.

Our conclusion therefore is that the court committed no reversible error in declining to allow the defendant to make the proffered proof.

The court committed no error, when it declined to consider the affidavit of one of the jurors trying the case, who undertook to testify to his own and fellow jurors' action and conduct while considering the case. A due regard for the proper and orderly administration of the law, a proper regard for the solemnity of verdicts of jurors, as well as a sound public policy forbid that members of a jury, after they have made their deliverances in court, should be allowed to impeach their verdicts. To give consideration to such affidavits would tend to bring the law and its administration into disrepute. We have carefully examined the evidence in the case, and we can see no reason for judicial interference here with the verdict of the jury, and are at the conclusion that the trial court properly overruled defendant's motion for a new trial.

There being no error in the record of which appellant can complain, the judgment of the circuit court will be here affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.