156 So. 835

**LAW et al. v. GULF STATES STEEL CO.**

7 Div. 251.

Supreme Court of Alabama.

Oct. 11, 1934.

☞For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

Culli & Culli, of Gadsden, for appellants.

Roger Suttle and O. R. Hood, both of Gadsden, for appellee.

BOULDIN, Justice.

The action is to recover damages for alleged destruction of growing or ungathered crops by impounding or damming up the waters of Big Wills creek in times of heavy rains.

■ The motion to strike the bill of exceptions because it sets forth the entire testimony in narrative form is not well taken.

When instructions to the jury, whether in the oral charge, in given charges, or refusal of written charges, or rulings on evidence, are to be reviewed, whose correctness, materiality, or injurious effect can best be determined in the light of the entire testimony, it is proper to set it all out.

■ In cases where the trial court has given an instruction on the weight of the evidence, or has considered same on motion for new trial, and such rulings are presented for review, it is essential that all the evidence be set out in the bill of exceptions.

■ The motion to strike certain original maps, showing United States Geological Survey, of the water shed of Big Wills creek, and certain photographs showing the flood waters, is likewise denied.

Supreme Court rule 47, looking to the incorporation of such matters in the record, is sufficiently complied with when the bill of exceptions shows they were offered in evidence, as such are made part of the bill of exceptions, and are identified by date, number, or other accurate designation, and the originals, bearing the same identifying data, are made a part of the record by inserting same as separate sheets, bound as other sheets.

■ If as here, the document discloses on its face that its reproduction on transcript paper would be "difficult or impractical," there is no need for a special certificate to that effect.

If the transcript clearly identifies the document, and the original incorporated therein conforms to such identification, the general certificate to the correctness of the transcript meets the spirit and purpose of the rule.

The plaintiffs brought a similar action for injury to crops by headwaters in time of freshet in 1929. On appeal from that judgment, our decision discussed the facts and legal principles pertinent to various phases of the case presented on the present appeal. Gulf States Steel Co. v. Law et al., 224 Ala. 667, 141 So. 641.

The instant suit was brought for injury to crops of 1932.

The complaint in three counts, 2, 3, and 4, claimed damages for alleged injuries on three distinct rises; namely, on or about July 7th, August 15th, and October 17th.

Count 2 alleged: "That on and prior to July 7, 1932, and up until the time of bringing this suit the defendant corporation maintained a dam, wall or other obstruction across said Big Wills Creek below and near the lands of the plaintiffs. That by the maintenance of said dam, wall or other obstruction the natural flow of water in time of heavy rainfall is obstructed causing said water in said stream to be thrown back and upon plaintiffs' said land, causing said lands to be overflowed and the crops growing thereon to be destroyed. That from to-wit, July 7, 1932, and up to the date of the filing of

this complaint the defendant wrongfully caused the water of Big Wills Creek in time of heavy rainfall to be thrown back upon plaintiffs' said lands, and to spread out over large areas thereof caused by the maintenance of said dam, wall or other obstruction in said Big Wills Creek. That as a proximate consequence" crops were destroyed, etc.

Counts 3 and 4 are similar, except as to date of overflow.

The plea was in short by consent; allowing any defense which could be specially pleaded, etc.

We first note some tendencies of the evidence in the light of which the instructions to the jury, and rulings on evidence, relied upon as error to reverse, must be considered.

In 1928, appellee, Gulf States Steel Company, erected a concrete dam across the channel of Big Wills creek, raising the level of the water above the dam at ordinary stages some 3 feet 8 inches, and backing up or eddying the water in the channel some three-fourths of a mile, and alongside plaintiffs' bottom lands, lying on the west of the creek.

A county highway bridge, known as McCartney bridge, spans the creek some 200 feet above the dam.

In connection with the dam defendant constructed a concrete wall on the west side of the creek extending from the dam up to the bridge. This wall is some 8 feet in height above the top of the dam, and at upper end on a level with the floor of the bridge. A similar wall was constructed on the east side of the creek from the dam up to defendant's pumping station, some 50 feet.

From the bridge a county road runs westward across the bottom just below plaintiffs' lands. For more than 20 years this road has been maintained by the county. Across the bottom, this road, at and prior to defendant's construction work, was on a fill or embankment, the height of which above the level of plaintiffs' bottom lands is not without conflict in the evidence. From time to time high waters broke over such embankment, washed it away in part, and it was repaired from year to year.

Plaintiffs' evidence tends to show that in connection with the construction of the dam and lateral walls, defendant, under the terms of a conveyance and contract with Chadwick, who owned the lands west of the creek and below this road, aided and assisted the county authorities in raising the height of this embankment, and especially in the low stretch where the waters were accustomed to break over.

The agreement with Chadwick is set forth in the former opinion, 224 Ala. 669, 141 So. 641, where it was held that evidence of the raising of this road and the impounding of the waters as the joint effect of the dam, walls, and raised embankment in times of high water was admissible.

Plaintiffs' evidence in the instant case tended to show that, as a proximate result of these obstructions, high waters were diverted from their natural course, made to flow in increased quantity over plaintiffs' bottom lands, impounded and raised to a higher level, and caused to remain longer over the crops of corn and hay in which plaintiffs were interested, and which were thus destroyed.

Defendant's evidence tended to show two different conditions as a defense to plaintiffs' demand:

First. That in fact the waters in 1932 were not diverted by the dam or walls in the channel of the creek; that from heavy and protracted rains the waters rose to a height which flowed evenly over the top of the dam, spread out over the low lands, and destroyed plaintiffs' crops. In other words, that the alleged obstructions had no causal connection with the injury, because the level of high water was not raised by the obstructions, and the injury would have ensued had there been no such obstructions.

Second. That the flood waters in question were so extraordinary and unprecedented during the crop growing season as not to be reasonably anticipated; and the injury was, therefore, the result of an act of God.

Defendant's given charge No. 6, which reads, "If the waters of Wills Creek reached to a height that the crops in which plaintiffs were interested would have been destroyed had the dam not been in existence or the road raised, plaintiffs would not be entitled to recover," was obviously a correct statement of the law as applied to any phase of the evidence.

Defendant's given charge, made the basis of the third assignment of error, reads: "If the crops in which plaintiffs were interested were destroyed as a result of an unusual and excessive rainfall in the Wills Creek water shed plaintiff would not be entitled to recover."

An "unusual and excessive" rainfall is not a correct definition of an act of God.

It is insisted this charge deals merely with causal connection.

If these lands lay so low that "unusual and excessive" rains caused the destruction of

crops, this was a natural hazard of farming such lands, and it would be immaterial whether the waters rose to such unprecedented height as could not reasonably be anticipated and guarded against.

But this charge was given along with others dealing with the act of God.

We think the charge omissive and misleading. Although the floods may have been "unusual and excessive," if the obstructions diverted or impounded waters and so increased the injury to crops, to that extent defendant would be liable. The charge should have negatived such condition.

Appellants contend that if these obstructions or any of them contributed to the injury to the crops, defendant would be liable for the entire injury, although without them there would have been injury by floods, or even the act of God. This contention seeks to apply the doctrine of joint tort-feasors.

The case of Welch v. Evans Bros. Construction Co., 189 Ala. 548, 66 So. 517, is relied upon. That case involved damages to a stock of merchandise from the negligence of a construction company in leaving open a hole in the roof over night. A rain came and damaged the goods. The case does deal with the injury as caused by the concurrent negligence of defendant and an act of God. This term is obviously used in the sense of a natural recurrence of nature against which defendant could have and should have guarded, and the entire injury been avoided.

It is no authority for holding one liable for the proximate consequence of something over which he had no control, and which would have occurred if the wrong charged to him had never been done.

This action is not analogous to a case of joint tort-feasors, wherein each concurs in creating dangerous conditions without which no injury would have occurred.

We hold that, if injury to these crops would have resulted regardless of any construction work of this defendant, whether from customary or extraordinary floods, the defendant is not liable therefor; but its liability, in such case, is limited to such increased injury, if any, as proximately resulted from such obstructions, and does not include injuries which would have occurred had no obstructions been made. 3 Kinney on Irrigation and Water Rights, pages 3120, 3121.

"Floods such as from climatic and geographical conditions may reasonably be expected, whether of frequent or infrequent occurrence, must be taken into consideration in estimating hazards attending the obstruction of water courses. The term 'act of God,' in its legal sense, applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them." Gulf Red Cedar Co. v. Walker, 132 Ala. 553, 556, 31 So. 374, 375. This definition of an act of God in such connection has been approved by Mr. Farnham as the proper one. 2 Farnham Waters and Water Rights, § 577a.

The court, in his oral charge, instructed the jury: "And if you should find that for that season of the year the rains were unprecedented rains or extraordinary rains for the season of the year complained of in the complaint as I have explained to you the different times claimed in the complaint, then if you should find that it is unprecedented rainfall for the climatic condition and that season of the year, then that would be unprecedented and extraordinary rainfall and an act of God, and a defense to this action."

Exception was reserved to this statement of the law.

The point of attack is that it limits such floods to that season of the year. Some evidence went to the point that similar floods were at least very unusual during the crop growing season.

Both reason and authority sanction the rule that a flood, the act of God, "includes its stage in such extraordinary freshets as cannot reasonably be anticipated at particular periods of the year." 2 Farnham, § 576.

Defendant's given charge, assignment of error No. 8, reads: "If plaintiff Ed. Law requested the Commissioners' Court to raise the road as it was raised, plaintiffs would not be entitled to recover damages proximately resulting from the joint effect of the raising of the road and construction of the dam."

There was evidence tending to show Ed. Law went with other citizens before the court of county commissioners at the time the raising of the road was being considered and joined in such request; and that the work was done under direction of the county, aided by defendant.

One cannot complain at the proximate consequences of what is done at his request. Mayor & Councilmen of Troy v. Coleman, 58 Ala. 570; Shahan v. Alabama Great Southern Railroad Co., 115 Ala. 181, 22 So. 449, 67 Am. St. Rep. 20.

But the above charge is erroneous in that it excludes all damages from joint effect of raising the road and construction of the dam because of the mere fact that plaintiff requested the raising of the road.

If, as some evidence tended to show, the dam and walls in the creek backed up the flood waters, causing them to leave the channel and flow in increased quantities over plaintiffs' land, where they were further impounded by the raised road, all to the injury of plaintiffs' crops, the request to raise the road as it was raised would not, standing alone, excuse defendant. Unless plaintiffs at the time knew of and assented to the construction of the dam along with the raising of the road, they cannot be held to have consented to the injury resulting from their joint effect. For the sake of an improved road they might take the risk of raising the road, without assuming the risk from joint obstructions, not known to them to be in contemplation.

 In this connection, and for the further guidance of the trial court, we observe that the complaint charges injury from the dam and walls in and across the creek. There is no separate count for damages arising exclusively from the raising of the road. Our former decision means no more than that this raising of the road was admissible in connection with evidence tending to show diversion of waters as charged in the complaint, thus authorizing a recovery for the joint injury proximately resulting from the whole.

The jury, under some phases of the evidence, might find that the dam and walls in the creek did not cause or affect this flood water over plaintiffs' crops, but that impounding the same by obstructing the natural flow of this excess water did work injury. If so, defendant would be liable to the extent such injury was caused by raising the road in which it participated.

 For such damages, if found by the jury, defendant would be excused, if the plaintiffs requested the raising of the road as it was raised.

Defendant's given charge, assignment of error No. 9, is a correct statement of the law on this line. As the case was tried, its giving was proper.

But the issues should be clarified so that such a charge be directed to damages solely due to raising the road, as a distinct claim from injuries the joint effects of all the alleged obstructions to the natural flow of the waters.

 The trial court admitted in evidence over the objection of plaintiffs the summons and complaint and the judgment rendered in the former suit above mentioned.

Appellee suggests this was done on an insistence by defendant that such suit was res adjudicata; that one entire cause of action for damages to the value of the lands and loss of crops had then accrued, and plaintiffs, by striking out the claim for injury to value of lands, split their cause of action, and are not entitled to further recovery.

Sloss-Sheffield S. & I. Co. v. Mitchell, 181 Ala. 576, 61 So. 934; Harris v. Town of Tarrant City, 221 Ala. 558, 130 So. 83, and City of Birmingham v. Flowers, 224 Ala. 279, 140 So. 353, are cited on this proposition.

The trial court, however, took a different view in submitting the case to the jury.

A right of recovery for each successive injury to crops mentioned in the complaint was the issue submitted. His ruling, in this regard, is not now presented.

The evidence, however, of former suit and judgment recovered for injury to the crops of 1929 remained before the jury, without instructions thereon.

As the issue was submitted, the jury might naturally infer this former suit had something to do with their present verdict.

It was error to admit such evidence and permit it to remain before the jury.

 Defendant's given charge, thirteenth assignment of error, is not to like effect as charge No. 3, condemned in former decision, 224 Ala. 670, 141 So. 641.

We find no error in the charge as framed on last trial. Ulbricht v. Eufaula Water Company, 86 Ala. 587, 6 So. 78, 4 L. R. A. 572, 11 Am. St. Rep. 72; North Alabama C., I. & Ry. Co. v. Jones, 156 Ala. 360, 47 So. 144.

 The portion of the oral charge, made the basis of assignment of error No. 11, was abstract; possibly misleading.

 The sole issue as to damages from the raised road was whether defendant participated in raising the road in 1928, within ten years of the injuries claimed. The right of the county to maintain it at the former grade is not involved. If raised in 1928, and injury proximately resulted from such raise, the only connection defendant had with it, the statute of limitations of ten years has no application. Cobia v. Ellis, 149 Ala. 108, 42 So. 751.

There is no claim for damages from the maintenance of the road at its former grade,

and damages recoverable, if any, are those proximately resulting from the alleged raise of grade.

For the errors pointed out, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.