11 So.2d 771

## LUX v. STATE.
### 6 Div. 940.

Court of Appeals of Alabama.
Feb. 2, 1943.

Wm. N. McQueen, Atty. Gen., and John J. Haynes, Asst. Atty. Gen., for the State.

Morel Montgomery, of Birmingham, for appellant.

BRICKEN, Presiding Judge.

Upon this appeal there has been considerable confusion and controversy as to whether or not the numerous documentary evidence introduced by the State upon the trial below, and made exhibits, are properly before this court for consideration. As to this, we note that the clerk of the circuit court, where the case was tried, has transmitted to this court all of said exhibits and under seal of his office has certified that the exhibits contained in the package are all the papers, cards and daybook, introduced in evidence in the case of State of Alabama v. Jack Lux. No. 78013.

In addition to the foregoing, there appears in the bill of exceptions which was approved and signed by the trial judge the following statement, viz.: "And this was

all the evidence in said cause, except the various exhibits hereinabove referred to which by agreement are being sent and certified to the Appellate Court by separate certificate and made a part of the bill of exceptions." All this and certain statements of counsel pending the trial, as to the transmission to this court of the several exhibits, all of which were properly numbered, designated and identified; is sufficient in our opinion to comply with Supreme Court Rule 47, Code 1940, Tit. 7 Appendix, which deals with matters of this character. As to Rule 47, the Supreme Court, in the case of Law v. Gulf States Steel Co., 229 Ala. 305, 156 So. 835, 837, said:

"Supreme Court Rule 47, looking to the incorporation of such matters in the record, is sufficiently complied with when the bill of exceptions shows they were offered in evidence, as such are made part of the bill of exceptions, and are identified by date, number, or other accurate designation, and the originals, bearing the same identifying data, are made a part of the record by inserting same as separate sheets, bound as other sheets.

"If as here, the document discloses on its face that its reproduction on transcript paper would be 'difficult or impractical,' there is no need for a special certificate to that effect.

"If the transcript clearly identifies the document and the original incorporated therein conforms to such identification, the general certificate to the correctness of the transcript meets the spirit and purpose of the rule."

We shall therefore treat the exhibits and consider them in this case, as if a strict compliance of said rule had been made.

This appellant, Jack Lux, was originally prosecuted, tried and convicted, in the Jefferson County Court of Misdemeanors, and appealed to the circuit court. He was there tried upon a complaint filed by the Solicitor wherein he was charged as for a violation of Sec. 259, Title 14, of the Code of Alabama 1940. Said Section reads as follows:

"Any person who shall buy or sell a pool, or any interest or share in such pool, or shall make or take a book, upon the running, pacing, or trotting, or what purports to be the running, pacing, or trotting, either within or without this state, of any mare, horse, or gelding, or upon any horse race, or upon what purports to be any horse race, whether within or without this state, shall be guilty of a misdemeanor, and shall, on conviction, be fined not less than fifty nor more than five hundred dollars, and may also be imprisoned in the county jail, or sentenced to hard labor for the county for not more than six months."

The complaint filed by the Solicitor followed substantially the wording of the statute, and was sufficient, in our opinion, to enable the accused to know what was intended. There was no error in the action of the court in overruling defendant's demurrer thereto.

However, the record shows, "After the arguments of counsel, and before the court gave oral instructions to the jury, the Solicitor stated, 'If your Honor please, I wish to withdraw that part of the complaint in reference to the making of a pool.' And that part of the complaint was withdrawn from the consideration of the jury." In connection with the foregoing, the court in delivering the oral charge to the jury stated: "There is no evidence in this case that this defendant bought or sold a pool. The only evidence, in the evidence that the state has offered, tends to show that he made or took a book upon a horse race, or what purported to be a horse race, either within or without the state, so I charge out the first part of this complaint and tell you that you need not consider that part of the complaint which charges that he bought or sold a pool, or an interest or share in a pool, and I will not undertake to discuss what a pool is because we are not concerned with it in this case; so the part that goes to you is the charge that he did make or take a book upon a horse race, or what purported to be a horse race either within the state or without the state."

The court thereupon proceeded to define "book-making" and said: "Book-making is a species of betting on horse races, and it imports some method of recording bets. In other words, when you say a man takes or makes a book it means that he takes a bet and he makes a record of that bet. When a person takes or makes a book on a horse race he offers certain odds that certain horses in certain races will not win, and he is ready to and does take any bets that any person wants to make at those odds on horses or the races that he is offering to bet on, and, when that bet is made, then he records that bet in a book, or on paper of some sort, makes a record of it. Now, if a man merely offered a bet, made a bet or took a bet, at odds, and made

no written record of it, then under our statute he would not be guilty, in other words, he would not be guilty of violating this particular statute under which this defendant is prosecuted. So, he must not only offer to bet, when a person comes along and takes his offer and makes him a bet, he must not only offer to take that bet, and take it, but he must make a written record of that bet. Now, what sort of a record has he got to make? First of all, he has got to record the name of the person with whom he is betting, the horse upon which the bet is made, whether that bet is made that the horse will win, place or show, the amount of money that person has bet, and the odds that the bookmakers offer, and the amount of money, if the person wins, that was paid to him. It is not necessary that he offer the odds before the bet is made—there can be an understanding that he is offering the odds offered at the track subject to a top limit or maximum amount. If the odds are more than that, he won't pay it. So, when you say that a man makes or takes a book it means that he holds himself ready to bet certain odds, to be determined at the track, for that particular race, and he is ready to take any bets that are offered, and that he does take those bets, or at least one bet, and that he makes a record which contains all the things I have described to you, and when he does that, then you can say he has made or taken a book on a horse race."

The controlling question in this case is one of fact. Appellant urgently insists the evidence adduced upon the trial was insufficient to sustain the burden of proof resting upon the State, and, therefore that the court erred in failing and refusing to so hold. In other words, the insistence of the appellant is the trial court erred in overruling defendant's motion to exclude the evidence, and also he was entitled to the affirmative charge, which the court refused to defendant.

This court has read the evidence in this case and considered it en banc.

The testimony is without dispute, consisting, as it does, of that introduced by the State. From this evidence it appears that this appellant, Jack Lux, was at the time complained of in the employ of one Bennie Fell who conducted a news stand in the City of Birmingham, Alabama, and at which place certain witnesses upon this trial testified they had made bets upon horse races within the time covered by the complaint in this case. In this connection said witnesses gave the names of the race horses and the amount of the bets made thereon, and testified also to further facts tending to show that said Bennie Fell at said location was engaged in "selling or buying pools or books on horse racing" in violation of the above quoted statute.

It was further disclosed that this appellant was in charge of and was conducting an office or room in Tarrant, Alabama, a suburb of the City of Birmingham, for said Bennie Fell, and at the time of his (appellant's) arrest, he had just unlocked and opened the door and entered said room or office. In this connection State witness, Paul T. Gaines, testified: "I am Chief of Police of Tarrant, Alabama. I did arrest this defendant, Jack Lux May 13, 1941, he was entering the office at 1104½ Ford Avenue, and I saw him unlock the door in that place upstairs, in a building in the City of Tarrant. He went into the room from the hall-way, into this one room. He got just inside the door, and we came up and identified ourselves as officers, and went on the inside of the room then. He had a paper marked 'American Racing Record,' dated May 13, 1941. It was in the possession of Mr. Lux when he came into the office on May 13th."

Said American Racing Record, was allowed in evidence over the objection and exception of defendant. It was marked and designated "State's Exhibit 1." In connection with the testimony of witness Gaines other documentary matters were likewise introduced in evidence and made State's Exhibits up to and including Exhibit No. 20. All this consisted of a mass of cards, a number of racing records, a daybook with memorandum of bets on horse racing, etc. This witness also testified: "There was a telephone in this building in question in the room upstairs, there was another—a tape machine there, with the tape in it that was introduced here in evidence, rolled out of that machine. The defendant put it on in a few minutes, I saw it in operation."

Witnesses Mrs. R. D. Goetz, Joe Agnesia, and Dave Fox, each testified they had made bets on horse races at Bennie Fell's news stand, above described, within the period of time covered by the complaint in this case. The racing tickets of some of these bets, appear upon cards introduced in evidence and found in the room or office, where this appellant was apprehended and arrested; and witness Gaines testified, after a full and sufficient predicate, that this appellant stat-

ed: "He said those records were kept by him, that they were kept in the office there. He said this day-book was his record too. And the sheets there you have mentioned."

It appears from the record, that while the officers were in the room, at the time of the arrest of appellant, the telephone in said room rang, and in response to question by the State to witness Gaines, viz.: "Did the defendant here make any statement with reference to the phone ringing or answering the phone? Witness answered: "He did, yes sir, he said if I didn't permit him to answer the phone they would come out to see why he wasn't at the office and why the machine wasn't in operation, they would come out there. He didn't call any names at that time. He had told us who he worked for and who furnished him the key to the office, he said he worked for Ben Fell, and that Ben Fell was the man who furnished him the key to the office." It was shown by the Green Morris Agency real estate and insurance located at Tarrant City (Enoc Morris testifying) "Back in May we did rent that property to Ben Fell, I have the lease executed by Ben Fell. He did execute it in my presence. That lease was executed the 8th day of March 1941 for one year." (Said lease was offered in evidence and "State's Exhibit No. 20.")

Upon the foregoing testimony, and other of like import, the trial court stated in overruling objection: "I will overrule the objection, and hold that the evidence is sufficient to make out the corpus delicti." In this, we are of the opinion the court ruled correctly, and as stated hereinabove, the controlling and conclusive question in this case is one of fact for the jury to determine.

The innumerable exceptions reserved to the court's rulings pending the trial are without merit. None of them can be sustained. As we see it, the court repeatedly stated unless there was evidence adduced to connect the defendant with the commission of the admitted illegal and unlawful avocation or acts disclosed by the testimony, he would so rule. From our viewpoint the trial court was unusually careful and fair in the rulings made. Certainly it cannot be maintained that there was insufficient evidence to prove the commission of the offense charged. This being true, the further evidence without dispute tended to disclose not only was this appellant in the employ of the principal actor in the premises, but he admittedly made and kept the records of the unlawful transactions. In line with this we quote with approval other and further statements of the trial court in the oral charge, where the court said: "Now gentlemen, the testimony for the State tends to show that there were numerous and sundry records found in the room at Tarrant City in which there was a ticker service; that this defendant had a key to that room; and it also tends to show that that room was rented by a man down in town named Ben Fell, who operated a newspaper stand, and that there was a telephone in there, and that the telephone bill was sent to this man Fell's stand and was afterward paid by somebody. The evidence also tends to show that this defendant stated that he was the one who made these records, and that he was working for Ben Fell, and there is evidence in this case which tends to show that various and sundry people went to Ben Fell's newsstand and bet money on horse races, and that their names, and the amounts that they bet, and the horses they bet upon showed up in these records out in Tarrant City that this defendant is alleged to have said that he made or kept.

"Making and taking a book on a horse race involves several different things. First of all, the taking of a bet is one item of it. Another item is the making of the records. Another item of it is the receipt of the information from the ticker service as to the results of the various races.

"* * * in the same way, if this defendant and Ben Fell agreed to operate a race horse book, or take or make a book to take bets, and one of them received the bets and transmitted those bets to the other one over the telephone or otherwise, and the one was instrumental in making a record, or if he had the records made under his supervision, although he did not make them, or if he played any part toward having those records made, then both this defendant and the said Ben Fell would be each guilty of making or taking a book, provided it was bets on horse races or what purported to be horse races."

This court has no authority or inclination to substitute itself for the trial judge and jury who heard and determined this case. We are of the opinion there was ample evidence to warrant the jury in returning the verdict rendered.

No reversible error appearing it is ordered that the judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.

Wm. N. McQueen, Atty. Gen., and John J. Haynes, Asst. Atty. Gen., for the State.