The Union Hill Baptist Church (Church) filed suit in ejectment against E.L. Cameron and Bessie Cameron (defendants). Approximately one acre (an old railroad right *Page 315 
of way) is in dispute. Defendants deny that the Church has legal title to the property and claim title by adverse possession and prescription. A jury verdict was rendered for the Church. We affirm.
The property in question is located adjacent to the Church building and cemetery. The property is 357 feet long and 100 feet wide situated on the east side of the Church running north and south between the Church and the defendants' property.
Both sides claim chain of title from a patent which Daniel Cameron received from the U.S. Government on June 10, 1892. Daniel Cameron died intestate on March 19, 1903, survived by his wife, Melinda Cameron, and three sons, W.Y., C.A., and R.C. Cameron.
On May 21, 1903, Melinda Cameron executed a warranty deed to the Forrester Lumber Company purporting to convey the property now in dispute. There were various other conveyances culminating with a conveyance to the Alabama and Florida Railroad Company, Inc., on July 15, 1937. On January 22, 1959, the Alabama and Florida Railroad Company, Inc., conveyed the property to the Church and its Deacons and Trustees. On November 2, 1960, the Railroad conveyed to the Church and on December 28, 1960, the Deacons and Trustees conveyed to the Church as a corporate body any interest which they had received in the January 22, 1959, deed.
In 1903 the Forrester Lumber Company laid rails on the property and it and its successors used the tracks continuously until April, 1934. The rails remained on the land until they were removed in about 1942.
The defendants' alleged chain of title arises from deeds executed by members of the Cameron family from January 19, 1920, to December 9, 1944. These deeds conveyed portions of the land which Daniel Cameron acquired by government patent and included the property in question. In 1920, W.Y. Cameron and wife and R.C. Cameron and wife conveyed to D.A. Cameron. In 1921, D.A. Cameron and wife and Melinda Cameron conveyed to W.Y. Cameron. W.Y. Cameron died intestate in 1923 survived by his wife Gertrude and two sons, E.L. Cameron and Ralph Cameron. In 1944, Gertrude and Ralph and wife conveyed to E.L. Cameron and Bessie Cameron, the defendants to this suit.
 I
The defendants claim the trial court erred for failure to grant their requests for a directed verdict at the close of the evidence. They maintain that the evidence affirmatively proved title in them through adverse possession.
The statutory requirements for title by adverse possession are set out in Tit. 7, § 828, Code of Alabama 1940, Recompiled 1958. One claiming under Tit. 7, § 828, must also establish the elements of adverse possession as stated by the court in Longv. Ladd, 273 Ala. 410, 412-413, 142 So.2d 660, 662 (1962):
 ". . . (1) such possession as the land reasonably admits of, (2) openness and notoriety and exclusiveness of possession, (3) hostility toward everybody else in respect of possession, (4) holding possession under claim of right on claim of color of title, and (5) continuity for statutory period of ten years."
The defendants maintain that the evidence shows that they assessed the property from 1944 to 1949, when an apparent clerical error was made. The alleged error was corrected in 1970 and defendants assessed the property for taxation until commencement of this action. The defendants further maintain that they cultivated the property as a home garden from 1942 to the commencement of this action.
The Church contends that the evidence shows that the defendants' assessment from 1949 to 1970 excepted one-half acre for "R.R." In 1970 the defendants bulldozed and planted the property. In the same year the tax assessment records failed to show the "R.R." exception. Several Church witnesses who lived in the vicinity of the Church testified that after the rails were removed in 1942, the land lay untended and that it became covered with weeds, bushes, *Page 316 
and small trees, some with a diameter of four to six inches, until the bulldozing in 1970. The Church also introduced minutes of the Church which tend to show that the defendant Bessie Cameron had been associated with the Church and that at least beginning in 1942, the matter of purchasing the property from the Railroad was brought up from time to time within the Church. The Church's witnesses also testified, contrary to the defendants' witnesses, that there was gardening only on the north end of the disputed property and that even this gardening was only sporadic and not continuous from year to year.
The defendants correctly state that the issue is whether their possession of the property in question was sufficient under the elements of adversity as espoused in Long v. Ladd, supra. The testimony clearly shows that a conflict in the evidence existed as to whether the defendants maintained the requisite continuity of possession. Such a conflict is due to be resolved by the jury. Eiland v. Frost, McGhee Co.,199 Ala. 639, 75 So. 293 (1917). The trial court correctly refused to grant a directed verdict.
 II
The defendants also claim that reversible error was committed when the trial court allegedly commented on the effect of the evidence. Defendants assert the court commented on the interpretation of Church minutes introduced into evidence. Defendants objected to the introduction of these minutes on the grounds that they did not evidence any official action taken by the Church relative to the acquisition of the property in question. We quote from the record:
 "THE COURT: You never have had a copy of those documents, Mr. Lee?
 "MR. LEE: Yes, sir. It's got more than two meetings in it, though, and that's what I was —
 "MR. JACKSON: We can eliminate this bottom one. It's on the same page.
 "MR. LEE: That's the reason I — yes, sir, this is the part he is trying to offer, and we would renew our objection. It does not evidence any official action taken by the church.
(Paper handed to the Court)
 "THE COURT: I would overrule the objection as to that part of it.
 "MR. JACKSON: Your Honor, are you talking about the top part?
 "THE COURT: Yes, sir. That meeting. Do you object to it — if he objects to it —
 "MR. LEE: Yes, sir. And then — I don't see — of course, anything in the January 10, 1943, part of it. I certainly — in that form —
 "THE COURT: Yes, I would sustain the objection to that portion of it, but I would overrule —
"MR. LEE: May I assign our grounds?
"THE COURT: Yes.
 "MR. LEE: I may have — but did I get in there, that it does not evidence any official action taken by the church relative to the acquisition of the property in question, or any interest therein. Do you want to just cut it off?
"MR. JACKSON: Yes, sir.
 "THE COURT: I would overrule the objection as to the minutes that show that the Camerons were present at that meeting, and that there was an official action taken, and it was dismissed until they found out the price. As I read it.
 "(Thereupon, the bottom part of Plaintiff's Exhibit # 2 being cut off and the rest admitted into evidence as Plaintiff's Exhibit 2.)
 "Q. Mrs. Halstead, backtracking, I show you what has been marked as Plaintiff's Exhibit number 2? Are these the minutes that you have just referred to?
"A. Yes, sir.
 "Q. Would you read those minutes to the Court and Jury?
"A. All of it?
"Q. Yes Ma'am."
Counsel's objection to the introduction of the minutes properly preserves for review only the issue of whether the minutes were properly admitted. Whether the *Page 317 
court improperly commented on the evidence is not raised as an issue for our consideration in the absence of an objection.Dendy v. Eagle Motor Lines, Inc., 292 Ala. 99, 289 So.2d 603
(1974); State v. Boyd, 271 Ala. 584, 126 So.2d 225 (1961).
 III
The defendants also contend that the court erred by giving a charge that was misleading, erroneous, and incomplete because it ignored the defendants' defense of adverse possession. The court charged the jury in part as follows:
 "The Court charges the jury that the Plaintiff may recover in this case by either showing title from a grantor in possession, from a common source, or by unbroken chain of title from the government."
The rule for review of an alleged error in giving a requested charge is stated in Alabama Power Co. v. Tatum, 293 Ala. 500,306 So.2d 251 (1974) as follows:
 ". . . we will review alleged error in the giving of a written requested charge in the same context as if such charge were a part of the oral charge; and, as we have stated many times, where the objected to portion of an oral charge is misleading, abstract, or incomplete, we will adjudge error to reverse only if we conclude that prejudice resulted from the giving of such charge in light of the entire instruction. Wren v. Blackburn, 293 Ala. 393, 304 So.2d 187
[1974]." 293 Ala. at 505, 306 So.2d at 255.
We have reviewed the record and it is clear from the other written requested charges given by the court and the trial court's oral charge that the jury was adequately charged as to the issue of defendants' claim of adverse possession. NationalDistillers and Chemical Corp. v. American Laubscher Corp.,338 So.2d 1269 (Ala., 1976).
 IV
Lastly, the defendants contend that the trial court erred in sustaining objections to the testimony of two members of the jury at a hearing upon defendants' motion for a new trial. The defendants sought to have A.B. Rudd and Raymond Shelley testify for the purpose of showing that questions propounded to prospective jurors on voir dire examination were not answered truthfully. The question put to the jury venire on voir dire was whether they would have any reluctance in finding against a church if the evidence justified it. There was no response to this question. The evidence to which objections were sustained was to the effect that some member of the jury stated during deliberations that the church needed this property for cemetery purposes.
The defendants concede that a juror is not allowed to testify to matters impeaching his verdict. Gulf States Steel Co. v.Law, 224 Ala. 667, 141 So. 641 (1932), and authorities cited therein. However, defendants maintain that their purpose was not the direct impeachment of the verdict, but only to prove that a juror had testified falsely on voir dire examination. Any impeachment of the verdict, it is argued, would be indirect.
This issue was decided in Alabama Fuel Iron Co. v. Powaski,232 Ala. 66, 166 So. 782 (1936). In Powaski, the appellant offered on a motion for new trial the affidavits of jurors concerning jury deliberations which showed that some jurors had answered falsely on voir dire examination to questions concerning union affiliations. The court refused to allow the affidavits stating as follows:
 ". . . And by an unbroken line of decisions this court has steadfastly adhered to the rule that the verdict of the jury may not be impeached by proof as to such deliberations. Our latest expression upon the subject is to be found in Gulf States Steel Co. v. Law, 224 Ala. 667, 671, 141 So. 641, 645, where the underlying principle for the rule is stated in the following language: `The court committed no error, when it declined to consider the affidavit of one of the jurors trying the case, who undertook to testify to his own and fellow jurors' action and conduct *Page 318 
while considering the case. A due regard for the proper and orderly administration of the law, a proper regard for the solemnity of verdicts of jurors, was well as a sound public policy forbid that members of a jury, after they have made their deliverances in court, should be allowed to impeach their verdicts. To give consideration to such affidavits would tend to bring the law and its administration into disrepute.'
. . . . .
 "There may be for such purpose proof of extraneous facts, as illustrated by the case of Alabama Fuel Iron Co. v. Rice, 187 Ala. 458, 65 So. 402.
 "But the affidavits here offered were not of extraneous facts, but concerned the debates and discussions of the case by the jury while deliberating thereon. They are therefore directly within the influence of the authorities herein noted.
. . . . .
 "It appears that, when questioned on their voir dire examinations as to any affiliations with any labor organization, some of the jurors, whose conduct in the jury room is complained of by the affidavits of Pratt and Buzbee, remained silent — accepted by the court as meaning they had no such affiliations. It is upon this fact and these affidavits as to what occurred in the jury room defendant relies to sustain its contention in this regard.
. . . . .
 "The difficulty, however, with defendant lies, not in the principle it seeks to apply, but with the method of attack. There is offered no extraneous fact, and there is nothing upon which to base any false concealment on the part of any juror, save the affidavits relating to the jury room deliberations. Defendant's case is therefore not brought within the rule of the Clark Case, supra, as will be observed from the following expression found therein: `In saying this we do not mean that a mere charge of wrongdoing will avail without more to put the privilege to flight. There must be a showing of prima facie case sufficient to satisfy the judge that the light should be let in. Upon that showing being made, the debaters and ballots in the jury room are admissible as corroborative evidence, supplementing and confirming the case that would exist without them."
No other evidence was offered to establish a prima facie case that some jurors had falsely answered questions on voir dire examination. The trial court correctly ruled the evidence inadmissible. See Freeman v. Hall, 286 Ala. 161, 238 So.2d 330
(1970); and 66 C.J.S. New Trial § 169, pp. 416-417.
The judgment is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, JONES and EMBRY, JJ., concur.