Linda Lucas sued General Motors Corporation ("G.M.C.") and Nichols Olds-Pontiac-Buick, Inc. ("Nichols"), for breach of warranty and fraud in the sale of a new automobile. The case was tried before a jury, which returned a general verdict in favor of Lucas for $15,000 on April 28, 1987. On the same day, the court entered judgment in that amount. On May 1 the court impanelled the jury again and allowed it to redeliberate the case. The jury returned a second verdict, $15,000 against G.M.C. and $15,000 against Nichols, for a total of $30,000, judgment being entered the same day. On May 8 the circuit court entered yet another judgment, awarding $15,000 in attorney fees, in addition to the $30,000 in damages previously awarded. G.M.C. and Nichols appealed.
In March 1985, Linda Lucas purchased a new Oldsmobile Cutlass from Nichols. At the time of the sale, the car she selected was represented as "new," and no disclosure of any hidden defects was made. About four months after she purchased the car, Lucas discovered that the car had been previously damaged and that the front half of the car had been repainted. Although it was undisputed that Nichols had inspected the car upon receiving it, Nichols's agent denied any knowledge of the defects in the car. Lucas met with Jim Kuhn, a district service manager for G.M.C., who acknowledged that the car had been damaged and repaired at the factory. He offered to repair and repaint the car, an offer Lucas refused. Lucas subsequently sued both G.M.C. and Nichols for breach of warranty and fraud.
On April 28, 1987, the jury returned the following general verdict: "We, the jury, find for the plaintiff and assess her damages at $15,000. Mrs. Veasey, Foreman." After the jury was excused, both defendants filed motions for JNOV or, in the alternative, new trial, which the trial court denied. On April 29, the day following the trial, Lucas's attorney happened upon two of the jurors who had sat on the case. The jurors expressed concern that the verdict that had been returned may have been incorrect. Specifically, the jurors said that the jury intended to return a $15,000 verdict against each defendant, for a total of $30,000. The attorney drafted the following affidavit, which was signed by all twelve jurors:
 "We were the jury that set [sic] on the case on April 28, 1987 of Linda J. Lucas vs. General Motors Corporation and Nichols Olds-Pontiac-Buick. It was our understanding from the Bailiff that the judgment we rendered would mean that General Motors and
Nichols Olds-Pontiac-Buick would each pay Fifteen Thousand Dollars ($15,000.00), or a total of Thirty Thousand Dollars ($30,000.00)."
On May 1, 1987, the court held a hearing on a motion for relief from judgment or in the alternative to alter or amend the judgment, which was filed by Lucas pursuant to A.R.Civ.P., Rule 59 (e). The jury was again impaneled and Lucas presented the above-quoted affidavit to the court. Although Lucas cited no case law in support of her motion, she argued that it fell within the rule covering clerical mistakes. A.R.Civ.P., Rule 60 (a), upon which Lucas relied, provides the following, "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."
In response to the motion by Lucas, the circuit judge allowed the jury to deliberate the case again. While the jury was in deliberation this second time, the court *Page 226 
heard the ore tenus testimony of the bailiff, A.B. Cotton, who had assisted the court during the trial. Cotton related the following occurrence during the initial jury deliberations:
 "[Cotton:] They knocked on the door and I opened the door and asked them if they had a verdict and they said no, they wanted to ask me a question. I said I can not answer a question that you ask. I said if there is anything that you want to talk to the Judge about or ask the Judge, I'll go ask the Judge a question for you.
". . .
 "They handed me this paper and said we don't know how to put this on here. Said we want to write down two different things on this paper, two different prices on this paper or we want another paper to do it on. I said I'll just have to go ask the Judge about it. I did. I [took] the paper and went and asked the Judge. The Judge told me, [he] said go back and tell them they will have to put it all on this paper, one figure. [sic]
 "[Attorney for Lucas:] Did you go back and tell them that?
"[Cotton:] I went back and told them that."
Attorneys for both G.M.C. and Nichols made timely objections regarding the admission of this testimony, along with objections to the affidavit and to allowing the jury to redeliberate the case. No objection was made to the ex parte contact between the bailiff and jury, an issue that we do not address here. All objections to the procedure, affidavit, and testimony were overruled, and the jury returned the following verdict: "We, the jury, find for the plaintiff and assess her damages to be as follows: General Motors, fifteen thousand dollars, Nichols Oldsmobile, fifteen thousand dollars, for a total of thirty thousand dollars. Sonja Veasey, Foreman."
Lucas then requested that the jury be instructed to give a single judgment for a total amount. The circuit judge responded, "I decline to instruct them along those lines. This being their verdict, the way they want it worded [sic]."
The jury was then excused and the defense attorneys renewed all of their previous objections. G.M.C. made a motion to reconsider the form of the verdict and to set that verdict aside and reinstate the original jury verdict. Nichols joined in this motion, which was overruled by the court.
On May 7, the circuit court held a hearing for the purpose of assessing attorney fees in the case. After the attorney for Lucas submitted testimony that he charged a 50% contingency fee in the case, and established opinion testimony from a local practitioner that from 33 to 50% is a reasonable fee, the circuit judge awarded $15,000 in attorney fees, pursuant to Ala. Code 1975, § 8-20-8. Judgment was entered for this amount and G.M.C. and Nichols appealed.
The first issue raised has to do with the propriety of allowing the jury to impeach its verdict by affidavit. Specifically, G.M.C. and Nichols argue that the trial court erred by denying their motions for JNOV or, in the alternative, for new trial, on the basis that it was error to allow impeachment of the verdict by affidavit.
The rule in this regard may have been best stated in GulfStates Steel Co. v. Law, 224 Ala. 667, 671, 141 So. 641, 645
(1932), where the Court said:
 "The court committed no error, when it declined to consider the affidavit of one of the jurors trying the case, who undertook to testify to his own and fellow jurors' action and conduct while considering the case. A due regard for the proper and orderly administration of the law, a proper regard for the solemnity of verdicts of jurors, as well as a sound public policy forbid that members of a jury, after they have made their deliverances in court, should be allowed to impeach their verdicts. To give consideration to such affidavits would tend to bring the law and its administration into disrepute. We have carefully examined the evidence in the case, and we can see no reason for judicial interference here with the verdict of the jury, and are at the conclusion that the trial court properly overruled defendant's motion for a new trial." *Page 227 
See also Bank of Cottonwood v. Hood, 227 Ala. 237, 149 So. 676
(1933); Continental Casualty Co. v. Ogburn, 186 Ala. 398,64 So. 619 (1914); Hall v. State, 134 Ala. 90, 32 So. 750 (1901). "These decisions are rested upon the principle that the law and public policy alike declare that affidavits of jurors with respect to occurrences in the jury room amongst themselves may not be received for the purpose of impeaching their verdict."Birmingham Ry., Light Power Co. v. Moore, 148 Ala. 115, 130,42 So. 1024, 1030 (1906), overruled on other grounds,Birmingham Light Power Co. v. Goldstein, 181 Ala. 517,61 So. 281 (Ala. 1913).
In the present case Lucas filed a motion for relief from judgment or to alter or amend on the basis of the jurors' affidavit. Although she recognizes that a jury verdict ordinarily may not be impeached by jurors' affidavits, Lucas contends that this case falls within the "extraneous facts" exception in the case law. Although her reliance on the cases of Jackson v. Brown, 49 Ala. App. 55, 268 So.2d 837 (1972), andWeekley v. Horn, 263 Ala. 364, 82 So.2d 341 (1955), is somewhat misplaced, the issue of the extraneous facts exception bears discussion.
In Alabama Fuel Iron Co. v. Powaski, 232 Ala. 66,166 So. 782 (1936), the Court discussed the extraneous facts exception to the prohibition against inquiry into the deliberations in the jury room. That case involved jurors who fraudulently concealed their affiliation with labor organizations, in spite of direct inquiry in that regard on voir dire. The affidavits that were offered, and that were rejected by the court, related to occurrences in the jury room that showed the verdict was based upon passion and prejudice, which was induced by the same jurors who had concealed their labor affiliations on voir dire. The Court held that the affidavits were not of extraneous fact, "but concerned the debates and discussions of the case by the jury while deliberating thereon." 232 Ala. at 72,166 So. at 787. See also, Cameron v. Union Hill Baptist Church,350 So.2d 314 (Ala. 1977), and Fabianke v. Weaver, 527 So.2d 1253 (Ala. 1988).
As the Court said of the affidavits in Alabama Fuel IronCo. v. Powaski:
 "The difficulty, however, with [the defendant's position] lies, not in the principle it seeks to apply, but with the method of attack. There is offered no extraneous fact, and there is nothing upon which to base any false concealment on the part of any juror, save the affidavits relating to the jury room deliberations. Defendant's case is therefore not brought within the rule of the Clark case [Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993
(1933)], as will be observed from the following expression found therein: `In saying this we do not mean that a mere charge of wrongdoing will avail without more to put the privilege to flight. There must be a showing of prima facie case sufficient to satisfy the judge that the light should be let in. Upon that showing being made, the [debates] and ballots in the jury room are admissible as corroborative evidence, supplementing and confirming the case that would exist without them.' [289 U.S. at 14, 53 S.Ct. at 469.]"
232 Ala. at 72-73, 166 So. at 787.
In the present case, as in Alabama Fuel Iron Co. v.Powaski, there is no extraneous fact sought to be proven by the affidavits. Here, there is only an allegation that the jury had a question, which was posed to the bailiff, relayed to the judge, and answered through the bailiff. The mere fact that the jury was confused regarding the proper form that the verdict should take is not grounds for admitting an affidavit regarding the content of jury deliberations. As the Court said of the affidavit in Alabama Fuel Iron Co. v. Powaski, "This does not meet the requirements of the law, and to admit the affidavits in the instant case would be to strike down the rule so long adhered to in this state, and so well supported by reason and sound policy." 232 Ala. at 73, 166 So. at 788. See also,Cameron v. Union Hill Baptist Church, 350 So.2d 314 (Ala. 1977). This Court cannot allow an inquiry into the deliberations of a jury three days after the verdict was rendered and judgment entered thereon, solely on the basis of a juror affidavit. See Alabama Fuel Iron Co. v. *Page 228 Rice, 187 Ala. 458, 463, 65 So. 402, 403 (1914), where the Court said:
 "While jurors are not allowed to testify as to occurrences in the jury room during their deliberations, nor as to the influence of internal or external events upon the verdict returned by them, they are competent witnesses for the proof of extraneous facts which may have influenced their verdict."
The impact of the judge's response to the jury question, through the bailiff, cannot be a basis for opening the jury's deliberations to examination. See Alabama Fuel Iron Co. v.Rice, supra, and Cameron v. Union Hill Baptist Church, supra.
Therefore, the trial court committed error in admitting the affidavit at the hearing on Lucas's motion for relief from judgment. The proper method for Lucas to ascertain whether the verdict reflected the intent of the jurors was by a request to have the jury polled, but Lucas made no such request.
Because we reverse the judgment on the basis of procedural irregularities, this Court pretermits a discussion of apportionment of damages in the second verdict rendered by the jury. See Yancey v. Farmer, 472 So.2d 990 (Ala. 1985), andWright v. Rowland, 406 So.2d 830 (Ala. 1981). Furthermore, on remand the court should be mindful that an award of attorney fees under Ala. Code 1975, § 8-20-8, requires a finding of breach of warranty. A general verdict on fraud and warranty counts is not sufficient under the statute to justify the imposition of attorney fees. See A.R.Civ.P. 49.
For the foregoing reasons, the judgment is due to be, and it is hereby reversed, and the case is remanded with instructions to reinstate the original verdict.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.