This is an appeal of a judgment entered on a jury verdict against Ford Motor Company ("Ford") and in favor of Renee and Rickey Phillips for $25,000. We affirm in part and reverse in part.
The issues are: whether the trial court erred when it refused to grant Ford's motions for directed verdict on the claims of breach of warranty and fraudulent misrepresentation; whether the closing arguments made by the plaintiffs' attorney improperly referred to punitive damages after the trial judge had stricken the plaintiffs' claim for such damages; whether the trial court erred in refusing to give the jury instructions relating to the plaintiffs' responsibility for maintaining their automobile; whether the trial court committed prejudicial error in charging the jury that damages for mental anguish could be recovered for breach of warranty and misrepresentation; whether the trial court erred in awarding fees to the plaintiffs' lawyers; and whether the trial court improperly rejected the motion for new trial or remittitur.
 FACTS
The Phillipses bought a new 1985 Ford Escort automobile from Covington Motors in Opp, Alabama. The purchase price of $8,115.48, after trade-in, included an extended warranty that covered the car for five years or 60,000 miles, whichever came first. The day the car was purchased, the Phillipses experienced trouble with the radiator. The next day, Renee Phillips took the car back to the dealer. The car was repaired, and the Phillipses experienced no further problems with the radiator. Approximately one month later, the car began consuming oil at a rate of one to two quarts per week. The car also began stalling *Page 994 
due to the failure of the engine to idle properly. In addition, the car's air conditioner emitted fumes inside the car when the air conditioner was operating. All of these problems were reported to Covington Motors, and the car was examined by its mechanics on several occasions, but it was never repaired to the Phillipses' satisfaction. Subsequently, Covington Motors went out of business.
The Phillipses contacted two other Ford dealerships regarding the problems, but they were told that the dealer who sold them the car should work on it and that any repairs would have to be approved by Ford. They attempted to telephone Ford but could only reach a recording. Jones Ford then opened on the site where Covington Motors had been. Approximately one year after purchasing the car, Renee Phillips took the car to Jones Ford to have the air conditioner and the idle checked. After this visit to Jones Ford, the Phillipses took the car to an independent mechanic to have the problems repaired. On April 30, 1987, the Phillipses sued Ford, alleging breach of express and implied warranties, and fraudulent misrepresentation.
At trial, Renee Phillips testified that, in addition to reaching a recording on several occasions, the Phillipses had been told by the Jones Ford service manager that their car was no longer under warranty, when in fact it was. At trial, the service manager testified that he told Rickey Phillips not to bring the car back to him. However, Ford points out that the Phillipses did not begin to complain about the oil problem until a year later and that when Jones Ford asked Mrs. Phillips to bring the car in on a daily basis for a two week period, she did not comply. Ford's expert at trial contended that the Phillipses did not service the crank case ventilation system, and that the lack of service caused sludge to build up in the engine and that this was the cause of some of the problems. The jury returned a general verdict for the Phillipses for $25,000. The court entered an order awarding fees of $10,500 for the Phillipses' attorney.
 I. DEFENDANT'S MOTIONS FOR DIRECTED VERDICT
Ford contends that, at trial, the Phillipses presented no evidence of fraud. Because the trial court ruled that the evidence would not support an award of punitive damages, Ford argues that an award for fraud was necessarily precluded. Ford also argues that a verdict should have been directed in its favor on the breach of warranty claim because the evidence at trial showed that the problems with the excessive oil consumption of the car were the direct result of a lack of maintenance by the Phillipses. Problems resulting from the owners' inattention were not covered under the warranty.
"A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ." Caterpillar Tractor Co. v. Ford,406 So.2d 854, 856 (Ala. 1981). Based on the record before us, it appears that a jury could reasonably have found the following: that the Phillipses began experiencing difficulties with the car on the day they purchased it; that the car began consuming oil at an inordinate rate a month after the purchase; that the car's air conditioner emitted fumes inside the car when the air conditioner was operating; that the car idled improperly; that the dealer who sold the car stated that it was a "good" car that would get "good" service; that the dealer who succeeded Covington Motors told the Phillipses that their car was not under warranty and not to return with the car; that each Ford dealership contacted by the Phillipses either refused to repair the car or required Ford's consent before doing so; that when attempts were made to contact Ford, a telephone recording told the Phillipses to go to their local dealer; and that the Phillipses' car was never properly repaired.
From this evidence, a jury could reasonably have concluded that the Phillipses should recover for breach of express and implied warranties and for fraudulent misrepresentation. Therefore, the trial court *Page 995 
correctly denied Ford's motions for directed verdict.
 II. CLOSING ARGUMENT BY THE PLAINTIFFS' COUNSEL
In his closing argument, the Phillipses' attorney asked the jury to return damages for mental anguish against Ford that would "catch their attention in Detroit." Ford argues that because the trial court had expressly ruled out an award of punitive damages, the argument was an improper attempt to get the jury to punish Ford.
An argument to a jury to "catch the attention" of the defendant's home office does not, by itself, suggest to the jury that the jury is to punish the defendant. The phrase "catch the attention" could just as easily have applied to other types of damages. It could be interpreted to suggest that the home office would be alerted by the jury's simply returning a verdict for the Phillipses' out-of-pocket expenses. Had he coupled his remarks with a plea to punish Ford, the Phillipses' counsel would have committed error. The fact that a company takes notice of a jury's decision does not necessarily mean that it has been punished by a jury. Therefore, we are unable to determine, with certainty, that counsel, by asking a jury to "catch their attention in Detroit," was asking the jury to punish Ford. Upon review of a trial court's ruling on an argument by counsel to the jury, "much must be left to the enlightened judgment of the trial court, with presumptions in favor of its ruling." Osborn v. Brown, 361 So.2d 82, 86 (Ala. 1978). The arguments of the Phillipses' counsel are not clearly prejudicial; therefore, the trial court's ruling is presumed to be correct.
 III. DEFENDANT'S REQUESTED JURY INSTRUCTIONS
Ford argues that the trial court committed reversible error by refusing to give its requested jury instructions 7, 8, 10, 11, and 12.
Requested instructions 7, 8, and 12 would have instructed the jury that the plaintiffs could not recover unless Ford breached its warranty and the Phillipses gave Ford notice of the defects and an opportunity to repair the car. The trial court was correct in refusing these charges. The evidence at trial conclusively showed that Ford had ample opportunity to cure the defect. The plaintiffs made a number of attempts to have the car serviced at more than one Ford dealership. One of the dealers told Mrs. Phillips not to come back. Several futile attempts to reach Ford for relief were made by telephone. Thus, the defendant's requested instructions 7, 8, and 12 were not based on the evidence presented at trial. Where there is no evidence supporting a party's proposed jury instruction, refusal of the instruction is not reversible error.Johnson-Brown Co. v. Dominey Produce Co., 212 Ala. 377, 380,102 So. 606 (1924).
Defendant's requested instruction 10 instructs the jury that "abuse, misuse, failure to properly maintain, or contributory negligence" by the plaintiffs would preclude the plaintiffs' recovery. Contributory negligence was not pleaded by the defendant in its answer. In order to raise the defense of contributory negligence, the defendant must affirmatively plead that defense. Creel v. Brown, 508 So.2d 684 (Ala. 1987). Besides, contributory negligence, even affirmatively pleaded, is not a proper response to a breach of warranty claim. Jury charges that are not accurate statements of the law may be properly refused. Ennis v. Whitaker, 281 Ala. 563,206 So.2d 367 (1968). Therefore, requested instruction 10 was properly refused.
Defendant's requested instruction 11 would have instructed the jury that it could not return a verdict for the plaintiffs if it found that plaintiffs' improper maintenance of the car caused the excessive use of oil. Based on the record, the trial court was correct in denying the charge. *Page 996 
 IV. JURY INSTRUCTION ON MENTAL ANGUISH
Ford also argues that the trial court erred in instructing the jury that the plaintiffs could recover for mental anguish resulting from a breach of express and implied warranties and breach of contract. Ford contends that there is no precedent in Alabama for allowing recovery of such damages involving breach of contract or warranty in the sale of a new car. In general, this is a correct statement.
In Ford Motor Co. v. Burkett, 494 So.2d 416 (Ala. 1986), Burkett had purchased a new Ford Escort automobile that used one to two quarts of oil a week. Burkett repeatedly had the car serviced, but it was never repaired. Ford and its dealer told Burkett that they would service the car and make her happy. Ultimately, the manufacturer and the dealer discontinued servicing the car and began treating Burkett with indifference. Although the trial court's judgment was reversed, because the court had allowed punitive damages in a case of innocent misrepresentation, this Court stated the following:
 "These reasonable inferences of fact authorize a factual conclusion that Ford, in its implied representations of 'new car' quality and fitness, along with its representation that the defect could and would be repaired to her satisfaction, misrepresented a material fact, which was relied upon by the buyer to her detriment. This finding, in turn, authorizes an award of compensatory damages, including loss of time and mental anguish proximately resulting from the wrong."
494 So.2d at 418.
Based on the authority of Burkett, the trial court did not err in allowing the jury to assess damages for mental anguish.
 VI. ATTORNEY FEES
Ford argues that the award of the plaintiffs' attorney fees was incorrect. We agree. Ford cites General Motors Corp. v.Lucas, 530 So.2d 224 (Ala. 1988), which states that, absent a finding of breach of warranty, "a general verdict on fraud and warranty counts is not sufficient under the statute [§ 8-20-8, Ala. Code 1975] to justify imposition of attorney fees."530 So.2d at 228. In this case, after the jury's general verdict, the trial court held a hearing and made a specific finding that the defendant had breached an express or implied warranty. The trial court's award of attorney fees was not in accord withLucas and the statute. Therefore, as to that issue, judgment is rendered for the defendant.
Accordingly, the judgment is affirmed in part and reversed in part and a judgment rendered.
AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.