This is an appeal from a judgment based on a jury verdict entered against Volkswagen United States, Inc., a division of Volkswagen of America, Inc. ("Volkswagen"), in favor of Edwin O. Dillard and awarding him money damages based on a *Page 1302 
breach of a warranty given on the sale of a new 1987 Volkswagen automobile. We affirm.
Dillard sued Volkswagen, alleging the breach of an express warranty and claiming damages for loss of the value of the car, damages for mental anguish, and attorney fees and costs. The jury returned the following verdict:
 "We, the jury, find in favor of [Dillard] and against [Volkswagen] and assess the damages as follows:
"7,000.00 Damages for loss of value to vehicle.
 "8,000.00 Compensatory damages for mental anguish.
 "It is our intention to award a total amount of damages for $15,000.00."
The trial court entered judgment on the verdict and also awarded attorney fees of $15,000 and costs of $231.81. Volkswagen appealed, arguing that the trial court improperly charged the jury that it could award damages for mental anguish on Dillard's breach of warranty claim. That charge reads as follows:
 "[I]n addition to the claims for loss in value [Dillard] has also claimed damages for mental anguish. Compensation for mental anguish proximately resulting from the alleged failure of the essential purpose of the warranty which Volkswagen issued.
 ". . . [W]here a contractual duty is so related with matters of mental concern or apprehensiveness or with the feelings of the parties to whom the duty is owed that a breach of that duty will necessarily or reasonably result in mental anguish or suffering and such matters were reasonably within the contemplation of the parties when the warranty became effective, then in such event, if [Dillard] is entitled to recover, he would be entitled to recover such sum as would reasonably compensate him for such mental anguish. . . ."
The sole issue presented on appeal is whether damages for mental anguish are recoverable in a breach of warranty action relating to the sale of a new automobile. The facts of the case are essentially undisputed.
In July 1988, Dillard purchased a new 1987 Volkswagen Scirocco automobile for $16,449.56. In connection with this purchase, Dillard received the Volkswagen warranty booklet and a folder in which the warranty was delivered, entitled the "VW Partnership." At the time Dillard purchased the automobile, he said, he thought it would be reliable and safe.
Dillard purchased the automobile from Southern States Collections, the then authorized Volkswagen dealer in Montgomery, which was succeeded by Parks Imports, Inc., as the local Volkswagen dealer. In April 1990, while Dillard's automobile was still under warranty, Parks Imports closed, leaving no Volkswagen dealership in Montgomery. Subsequently, Volkswagen appointed Jack Ingram Motors as its Volkswagen dealer, but kept this information from Dillard, even though his automobile was still in warranty and needed repairs. During the first year Dillard owned the automobile, he turned the automobile in for repair from 12 to 14 times. Repair reports indicate that he turned the automobile in on 21 occasions during the first year and a half. On one occasion, the automobile was kept for two months. Altogether, as of the date of the trial, the automobile had been in the shop for mechanical repairs for a period of four months. Not only had Dillard spoken with numerous people in the local Volkswagen dealerships and with Volkswagen's own representative about the problems with the automobile, but he had also written Volkswagen.
Dillard experienced "a hesitation, stalling, jerking problem" with the car and also "a grinding noise in the gear shift." There was no pattern to the loss of power, hesitation, and stalling problems. According to Dillard, the jerking problem, which occurs in every gear, suggests that there is "air or water in the gas line."
Although he had turned the automobile in for repairs, these problems continued. Because the automobile "cut off" and "stopped" when he pulled out in front of *Page 1303 
oncoming traffic, he had to make allowances for the possibility that the automobile might not accelerate properly. On occasion, when the car "died," Dillard could not get it to crank and was forced to push the automobile out of the street until the automobile reached normal operating temperatures — oftentimes, he had to wait as long as 15 or 20 minutes. The automobile broke down one night and he had to walk home, the walk taking approximately three hours.
In addition to the problems heretofore discussed, the automobile also had a problem that caused white or light blue smoke to come out of the exhaust. The severity of the problem varied, but, at its worse, Dillard described the problem as follows:
 "On several occasions, I've had cars behind me and I didn't know it because of the smoke. And I wanted to change lanes to get over to the right-hand side of the road to get off the road sometimes, and I didn't know cars [were] coming up on me or cars were right in back of me."
When the automobile was smoking badly and was stopped at a light, it filled with smoke, which Dillard tried to combat by opening the window and vents and by turning on the air conditioner "full blast." There was no way to predict when the smoking problem was going to occur.
The automobile did not idle properly — it would race, slow down, and then race. The automobile had a sun roof that leaked when it rained, so that Dillard used plastic to try to keep the rain out.
Dillard contends that the automobile's "stalling, cutting off, [and] losing power in the face of on coming traffic has caused him anxiety, embarrassment, and anger"; that "He has had near misses in driving his car as a result of its loss of power"; and that "When that happens it frightens him." Dillard also contends that the automobile's performance caused him frustration and disappointment and that the automobile had not been reliable or dependable, had put his life in jeopardy, had not provided him with safe transportation, and had caused him to worry. In fact, according to Dillard, it is the worst situation that he has ever been in in his life.
A Volkswagen representative testified that automobile owners have more emotional attachment to new cars than to used ones; that the situation he observed concerning the automobile's hesitation would have frustrated him; that he had no doubts about the legitimacy of the "stack full" of complaints about the performance of the automobile; that he agreed Dillard had some reason for questioning the durability and reliability of this particular automobile; and that Dillard's ownership of the automobile had been anything but pleasurable for a good portion of the time. In fact, with respect to the claim found in the VW brochure on the 1987 Volkswagen Scirocco that "[a] nationwide network of authorized Volkswagen dealers stands" behind the car, Volkswagen's representative testified that that "hasn't been the reality of the situation here."
Specifically, the Volkswagen representative testified as follows:
 "Q. If a person operating [an automobile that] pulls out in the face of oncoming traffic and the [automobile] stalls, hesitates — has the problem that you found when you drove [Dillard's automobile] — would you anticipate that that would cause the operator of the [automobile] mental concern and worry and apprehension about his physical well-being?
 "A. Yeah, I'd be worried the car was going to run into me."
"FAHRVERGNÜGEN,"[1] THIS WAS NOT.
Although the generla rule in Alabama is that mental anguish is not a recoverable *Page 1304 
element of damages arising from breach of contract, this Court has traditionally recognized the following exception to the rule:
 "The general rule is that damages cannot be recovered for mental anguish in an action of assumpsit. The ground on which the right to recover such damages is denied, is that they are too remote, were not within the contemplation of the parties, and that the breach of the contract is not such as will naturally cause mental anguish. "Yet where the contractual duty or obligation is so coupled with matters of mental concern or solicitude or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, it is just that damages therefor be taken into consideration and awarded."'"
B M Homes, Inc. v. Hogan, 376 So.2d 667, 671 (Ala. 1979) (citations omitted) (emphasis added), quoting F. Becker Asphaltum Roofing Co. v.Murphy, 224 Ala. 655, 657, 141 So. 630, 631 (1932), which was quoted inStead v. Blue Cross — Blue Shield of Alabama, 346 So.2d 1140, 1143 (Ala. 1977).
These cases have not required mental anguish to be corroborated by the presence of physical symptoms. Rather, the only requirement in such cases is the presentation of evidence of mental anguish. Thereafter, the question of damages for mental anguish becomes a question of fact for the jury to decide. B M Homes, Inc., supra. For actions on contracts for the repair or construction of houses or dwellings or the delivery of utilities thereto, where the breach affected habitability, see OrkinExterminating Co. v. Donavan, 519 So.2d 1330 (Ala. 1988); Lawler MobileHomes, Inc. v. Tarver, 492 So.2d 297 (Ala. 1987); Alabama Power Co. v.Harmon, 483 So.2d 386 (Ala. 1986); B M Homes, Inc. v. Hogan, supra;Alabama Water Service Co. v. Wakefield, 231 Ala. 112, 163 So. 626
(1935); Becker Roofing Co. v. Pike, 230 Ala. 289, 160 So. 692 (1935); F.Becker Asphaltum Roofing Co. v. Murphy, supra; Hill v. Sereneck,355 So.2d 1129 (Ala.Civ.App. 1978); for actions on contracts of carriage, see Nashville C.S.L. Ry. v. Campbell, 212 Ala. 27, 101 So. 615
(1924), and for contracts to provide special accommodation, see PullmanCo. v. Meyer, 195 Ala. 397, 70 So. 763 (1915); and for actions on a physician's breach of contract to deliver a baby, thereby causing the mother to deliver a stillborn child, see Taylor v. Baptist MedicalCenter, Inc., 400 So.2d 369 (Ala. 1981).
In general, the Court has never applied this exception to the sale of a new automobile, so there is no precedent in Alabama for the recovery of damages for mental anguish resulting from a breach of contract or warranty in the sale of a new car. See Ford Motor Co., Inc. v. Phillips,551 So.2d 992 (Ala. 1989).[2]
In the instant case, we are asked to widen the breach in the general rule beyond its present limits so as to allow the recovery of damages for mental anguish in a breach of warranty action involving the sale of a new automobile. Although the parties argue whether the facts of this case fit within the exception to the general rule as heretofore stated, because this case involves the sale of an automobile, we must examine this case in light of the Uniform Commercial Code, Article 2, Ala. Code 1975, §7-2-101 et seq., dealing with sales, for *Page 1305 
guidance as to the proper measure of dam| ages.[3]
The measure of damages for breach of warranty in the sale of goods is set forth in § 7-2-714(2), (3):
 "(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount, and nothing in this section shall be construed so as to limit the seller's liability for damages for injury to the person in the case of consumer goods. Damages in an action for injury to the person include those damages ordinarily allowable in such actions at law.
 "(3) In a proper case any incidental and consequential damages under section 7-2-715 may also be recovered."
Section 7-2-715 reads, in pertinent part, as follows:
 "(2) Consequential damages resulting from the seller's breach include:
 "(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
 "(b) Injury to person or property proximately resulting from any breach of warranty."
The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. If possible, the intent of the legislature should be gathered from the language of the statute itself. However, if the statute is ambiguous or uncertain, the Court may consider conditions that might arise under the provisions of the statute and examine the results that will flow from giving the language in question one particular meaning rather than another. John Deere Co. v. Gamble, 523 So.2d 95, 96-97 (Ala. 1988), quoting from Clark v. Houston County Comm'n, 507 So.2d 902, 903-04 (Ala. 1987).
The language of the above-cited sections is not ambiguous. Rather, the legislature expressly stated that it did not intend to limit "the seller's liability for damages for injury to the person in the case of consumer goods" and emphasized that such "[d]amages in an action for injury to the person [was to] include those damages ordinarily allowable in such actions at law."
Therefore, in order to resolve the issue before us, we must determine what the legislature intended by the words "injury to the person," as they relate to an award of damages for breach of warranty.
 "Personal injury" is defined as follows: "In a narrow sense, a hurt or damage done to a man's person, such as a cut or bruise, a broken limb, or the like, as distinguished from an injury to his property or his reputation. The phrase is chiefly used in this connection with actions of tort, for negligence and under worker's compensation statutes. But the term is also used (chiefly in statutes) in a much wider sense, and as including any injury which is an invasion of personal rights, and in this signification it may include such injuries to the person as . . . mental suffering."
Black's Law Dictionary 786 (6th ed. 1990). (Emphasis added.)
 "Mental anguish" is defined as follows: *Page 1306 
"When connected with a physical injury, this term includes both the resultant mental sensation of pain and also the accompanying feelings of distress, fright, and anxiety. As an element of damages [it] implies a relatively high degree of mental pain and distress; it is more than mere disappointment, anger, worry, resentment, or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emotions as grief severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation. In other connections, and as a ground for divorce or for compensable damages or an element of damages, it includes the mental suffering resulting from the excitation of the more poignant and painful emotions, such as grief severe disappointment, indignation, wounded pride, shame, public humiliation, despair, etc."
Black's Law Dictionary 985-86 (6th ed. 1990). (Emphasis added.) (Citation omitted.)
When we researched further, looking to the section of the Alabama digest entitled "MEASURE OF DAMAGES — (A) INJURIES TO THE PERSON," as it relates to contract and tort law, we found that the cases that are cited specifically therein allow for damages not only for physical injury but also for mental suffering. See 7A, Alabama Digest, Key nos. 95, 102.
Furthermore, over 75 years ago, in Vinson v. Southern Bell Telephone Telegraph Co., 188 Ala. 292, 304-05, 66 So. 100, 103 (1914), the Court, in effect, explained what constituted "injury to the person" so as to justify an award of damages:
 "It cannot be affirmed, as a matter of law, that the physical effort expended by plaintiff . . . was only a mental disturbance or discomfiture. "Injury to the person' is . . . synonymous with bodily hurt, bodily harm. Great physical effort may be immediately productive of that character of hurt or harm. If such effort produces physical exhaustion, it is open, at least, to be concluded that bodily harm or hurt has, though not visibly manifested in impaired physique, resulted. Such a draft upon vital organs may produce direct effects hurtful, harmful to the physical man, to the person. It has never been supposed that only permanent injuries were injuries to the person; nor that only visible injuries or injuries susceptible of being discovered or known through any of the five senses of another observing the person alleged to have suffered injury were injuries to the person. The absence of some sort of physical manifestation of injury to the person is, of course, evidence of the absence of such injury; and, in cases where the injury claimed is of the obvious, one way or the other, such evidence is, of course, conclusive. It was a jury question on the evidence here whether the physical effort expended by plaintiff resulted in injury to his person; and, if so, mental distress suffered in consequence . . . was, if shown, an element for which damages might be awarded. . . ."
(Emphasis added.)
In addition, as previously stated, although Alabama historically did not allow the recovery of damages for mental distress where there was no accompanying physical injury, we have now adopted the rule that recovery may be had for mental suffering without the presence of physical injury, concluding in 1981 in Taylor v. Baptist Medical Center, supra, at 374, that "to continue to require physical injury . . . would be an adherenceto procrustean principles which have little or no resemblance to medicalrealities." (Emphasis added.) Consistent with the conclusion in Taylorv. Baptist Medical Center, consistent with contract and tort law in Alabama where damages for injury to the person are allowed for both physical injury and for mental anguish, and based on the express language of the UCC allowing damages for injury to the person in the case of a breach of warranty to include those damages ordinarily allowable in such actions at law, we do not interpret the UCC as restricting damages for breach of warranty for injury to the person solely to physical injury. Rather, we interpret that language as *Page 1307 
following the jury to award such damages for mental anguish as it, in its sound judgment and discretion, determines would reasonably and fairly compensate the person for the mental anguish suffered.
Therefore, in the instant case, based on the undisputed facts, which evince a breach of warranty that caused Dillard to suffer anxiety, embarrassment, anger, fear, frustration, disappointment, and worry (not to mention the undisputed facts that the automobile has not been reliable or dependable and has not provided him with safe transportation); and based on our conclusion that the intent of the legislature, when it provided for an award of damages for injury to the person for breach of warranty, was that those damages include not only damages to compensate for physical injury, but also damages to compensate for mental anguish, we conclude that the trial court properly charged the jury that it could award damages for mental suffering in an action for breach of a warranty given on the sale of a new car.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and INGRAM, JJ., concur.
KENNEDY, J., concurs in the result.
[1] "Fahr" comes from "fahren", which means "to drive" or "to ride", and Vergnügen means "pleasure, enjoyment; fun; entertainment." Langenscheidt's New College German Dictionary 185, 570 (1973).
[Reporter of Decisions' note: The word "Fahrvergnügen," suggesting the pleasure of driving, and particularly the pleasure of driving a German-engineered automobile, was the theme of an extensive Volkswagen advertising campaign being conducted at the time this opinion was released.]
[2] We must note at this point that the Phillips opinion could be misconstrued as setting such a precedent. See briefs of Dillard and Volkswagen; see, also, C. Gamble, Alabama Law of Damages, § 35-18 (2d ed. 1990 Supp.) However, a close reading of that case, in light of a clear understanding of the resolution of the issues in Ford Motor Co. v.Burkett, 494 So.2d 416 (Ala. 1986) (the case on which this Court based its holding in Phillips), evinces an irreconcilable inconsistency in the two. It appears that the Court in Phillips addressed the issue of damages for mental anguish as it related to the breach of warranty claim, but then resolved the issue of such damages on the authority of Burkett, in which the trial court found evidence of misrepresentation and thus allowed an award of damages for mental anguish. Therefore, we findPhillips to be of no precedential value to the issue before us. However, even though we question the legal reasoning used by the Court in resolving the issue in Phillips, in light of our holding in the instant case, the result reached in Phillips was nonetheless correct.
[3] The exclusive remedy provided by the usual new vehicle contract is repair or replacement of the defective parts. Whatever the engineering difficulty is that makes an automobile a "lemon, "no amount of repair or replacement is adequate to solve the problem; thus the exclusive remedy fails, and the UCC remedies prevail. Riley v. Ford Motor Co.,442 F.2d 670 (5th Cir. 1971); C. Gamble, Damages, § 35-3. In other words, where, because of the circumstances, an apparently fair and reasonable limitation or exclusive remedy fails in its purpose or operates to deprive either party of the substantial value of the bargain, that part of the agreement must give way to the general remedies provided by the UCC. See Bishop v. Sales, 336 So.2d 1340 (Ala. 1976); see, also,Volkswagen of America, Inc. v. Harrell, 431 So.2d 156 (Ala. 1983);Winchester v. McCulloch Bros. Garage, 388 So.2d 927 (Ala. 1980); C. Gamble, Damages, § 35-3.
In addition, any limitation or exclusion of consequential damages for injury to the person is prima facie unconscionable. Section 7-2-719(3).