ON APPLICATION FOR REHEARING
This court's original opinion, dated February 19, 1993, is withdrawn, and the following is substituted therefor:
On April 6, 1990, Dr. Thomas Yates filed a complaint against BMW of North America, Inc. (BMW NA), Bayerische Motoren Werke, Aktiengellscaft (BMW AG), and Scott Nissan BMW, Inc. (Scott). Yates alleged that Scott, a BMW dealership located in Tuscaloosa, Alabama, was guilty of innocent fraud and that BMW NA and BMW AG were guilty of intentional fraud, based on their conduct arising out of the sale of a new automobile to Yates.
BMW AG was dismissed from the action on the first day of trial. Following a week-long trial, the jury returned a verdict against BMW NA for compensatory damages in the amount of $4,600. No punitive damages were awarded.
Yates filed a motion for new trial, which was denied. Yates appeals.
The record on appeal consists of the clerk's record, exhibits, and excerpts from testimony elicited at trial. The facts, gleaned from the record, are as follows: Yates wished to purchase a black BMW 535i with specific optional equipment. He contacted Scott to locate the automobile. Scott located a suitable automobile at a BMW dealership in Knoxville, Tennessee. Scott acquired the automobile, pursuant to the manufacturer's dealer trade system, from the Tennessee dealership and sold it to Yates on February 12, 1990. Subsequent to the purchase Yates discovered that the automobile had been repainted, thus beginning this legal proceeding.
The record reflects that when the Yates automobile was imported, BMW NA discovered that the top coat of paint had been affected by acid rain. As a result of the discovery, BMW NA shipped the car to Texas to one of its vehicle processing centers to have it refinished. The BMW NA quality control manager described the refinishing job in the following manner:
 "As a part of the refinishing process, approximately 10 microns of paint were removed from the horizontal surfaces of the Vehicle. The ten microns of paint were removed by sanding the surfaces with very fine grit sandpaper. One micron is equivalent to 1/1000th of a millimeter. . . . The amount of paint applied to the Vehicle in the refinishing process results in the Vehicle being within BMW specifications for paint thickness."
It was undisputed that the automobile did not suffer any sheet metal or body damage.
The record reflects that since 1983 BMW NA has utilized the same disclosure policy of pre-dealer damage to its automobiles. The policy provided that if the cost of repair was less than 3% of the suggested retail value of the vehicle, the vehicle would be repaired and sold as a new vehicle without disclosure of the repair even to the dealer. If the cost of repair exceeded 3% of the suggested retail value of the vehicle, the vehicle would be repaired, put into company service for six months or 10,000 miles, and sold with a used title. It is disputed as to whether BMW NA *Page 939 
made disclosures on automobiles that had more than 3% damage. It is undisputed that the repair of Yates's automobile was less than 3% of the suggested retail price and that no disclosure was made to Yates or to the dealerships involved in the transaction.
Yates presented evidence at trial that to repaint all or part of a new car diminishes its value by at least 10%. In this instance the 10% diminished value equaled $4,600, the amount of compensatory damages awarded to Yates.
Yates also entered into evidence 5,856 repair orders for automobiles which had been processed through the BMW NA vehicle processing centers during the past ten years and sold without disclosure.
The only issue on appeal is whether the trial court erred in refusing to give two of Yates's requested jury instructions.
The refused charges are as follows:
"ONE
 "I charge you Ladies and Gentlemen of the jury that the Alabama Legislature passed an Act concerning dealings by motor vehicle manufacturers with motor vehicle dealers. One of the stated purposes of the passage of this Act was to regulate the dealings between manufacturers and distributors or wholesalers and their dealings [sic] in order to prevent fraud and other abuse upon the citizens of this state and to protect and preserve the investments and property of the citizens of this state.
 "§ 8-20-9(c) of that Act provides as follows: 'With respect to new or used vehicles sold or otherwise transferred by the manufacturer to a new motor vehicle dealer, the manufacturer shall notify in writing the new motor vehicle dealer of all damage and repairs made to such vehicle which is known to the manufacturer.'
 "I charge you ladies and gentlemen of the jury that this section of the law became effective July 3, 1991, after the sale of the plaintiff's vehicle. You may not consider this section of the law to determine whether or not the plaintiff is entitled or is not entitled to recover. However, in the event you should determine that the plaintiff is entitled to recover you may consider this statute as having a bearing upon the propriety of awarding punitive damages and the amount of punitive damages that you may award.
"TWO
 "I charge you Ladies and Gentlemen of the jury that the Alabama Legislature passed an Act concerning dealings by motor vehicle manufacturers with motor vehicle dealers. One of the stated purposes of the passage of this Act was to regulate the dealings between manufacturers and distributors or wholesalers and their dealings [sic] in order to prevent fraud and other abuse upon the citizens of this state and to protect and preserve the investments and property of the citizens of this state.
 "§ 8-20-9(c) of that Act provides as follows: 'With respect to new or used vehicles sold or otherwise transferred by the manufacturer to a new motor vehicle dealer, the manufacturer shall notify in writing the new motor vehicle dealer of all damage and repairs made to such vehicle which is known to the manufacturer.' "
Each party is entitled to have proper instructions given to the jury regarding the issues presented at trial. Jones v.Chrysler Motor Corp., 578 So.2d 1323 (Ala.Civ.App. 1990). There is nothing improper with charging the jury on the language of a statute when one of the issues in the case is whether a statute has been breached. Grayco Resources, Inc. v.Poole, 500 So.2d 1030 (Ala. 1986). A reproduction of statutory language is not sufficient unless its meaning and application to the facts of the case are clear without explanation. Grayco;Structural Rubber Products v. Park Rubber Co., 749 F.2d 707
(Fed. Cir. 1984). " 'An academic recitation of the language of a statute without any direction as to how it may be applied to the disputed facts before the jury is too general to furnish guidance to them.' " Grayco, (quoting Pritchard v. Liggett Myers Tobacco Co., 350 F.2d 479 (3rd Cir. 1965)). Furthermore, instructions that are misleading and confusing or instructions that are not premised on the evidence are properly *Page 940 
refused. Ford Motor Co. v. Phillips, 551 So.2d 992 (Ala. 1989);Pioneer Credit Co. v. Downey, 41 Ala. App. 430, 134 So.2d 217
(1961).
Section 8-20-9(c), Code 1975, became effective on July 3, 1991. BMW NA sold the automobile in question to the Tennessee dealership in January 1990. Scott sold the automobile to Yates in February 1990, approximately one and one-half years before the statute became effective.
Yates asserts that regardless of the effective date of the statute, he was entitled to an instruction about the existence of § 8-20-9(c) because, he claims, there was evidence presented that "BMW was deliberately thumbing its nose at the law of Alabama for its own economic gain." Yates insisted that such an instruction was relevant to the appropriateness and amount of punitive damages, in that BMW NA's deliberate breach of the statute showed a pattern and practice of its fraudulent conduct.
We find that the requested instructions were properly refused because they were confusing, misleading, and not premised on sufficient evidence.
Yates insists that the instructions were premised on an abundance of evidence. He contends that the admittance into evidence of the 5,856 repair bills and the testimony of BMW NA's general counsel established that BMW NA deliberately violated the 1991 statute.
From the limited record before us, it appears that Yates simply introduced into evidence a bulk exhibit existing of 5,856 repair bills. The bills were introduced to show that BMW NA sold over 5,800 automobiles without disclosing that it had made repairs to them. The exhibit included repairs made over a ten-year period and included automobiles sold throughout the country. There is no indication from the record that any of the repair bills were introduced as an example to show that BMW NA had violated the provisions of § 8-20-9(c). It appears from the record and from the parties' briefs that the first time Yates offered any isolated examples of a violation of § 8-20-9(c) was on this appeal. Yates's introduction of the 5,856 repair bills into evidence, without any explanatory testimony or any indication that the exhibit contained examples of a deliberate violation of § 8-20-9(c), was not sufficient to warrant the giving of his requested instructions.
Yates insists that deposition testimony of BMW NA's general counsel establishes that BMW NA was deliberately violating § 8-20-9(c). In his brief, Yates makes the following comment: "the undisputed testimony from David Cordero, in-house counsel for BMW, was that BMW was not complying with the Alabama statute even though it had been enacted for nine months at the time of trial." We have read Cordero's deposition (which was read at trial) and find that Yates misstates Cordero's testimony. Yates never questioned Cordero on the Alabama statute, and Cordero never made any admission that BMW NA was deliberately violating the statute.
The problem here is that Yates failed to get before the jury any evidence whatsoever concerning a deliberate violation of § 8-20-9(c). In fact, there was no mention, no reference, and no allusion to the Alabama statute.
The trial court properly refused to give Yates's requested instructions. The first requested instruction was properly refused because the instruction was not premised on sufficient evidence, and as written, was confusing and misleading.Ford Motor Co.; Pioneer Credit Co. The second requested instruction was properly refused because it was a mere recitation of the statute with no explanation as to how it related to the facts of the case. Grayco.
The judgment of the trial court in refusing to give the requested jury instructions is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION *Page 941 
FOR REHEARING OVERRULED; AFFIRMED.
All the Judges concur.